**In re KNUDSEN BROS. DAIRY, INC., Debtor.**

**Bankruptcy No. B–79–697.**

United States Bankruptcy Court, D. Connecticut.

Nov. 4, 1982.

Robert A. Slavitt, Slavitt, Connery & Vardamis, Norwalk, Conn., for debtor.

Richard Belford, Belford & Belford, New Haven, Conn., Trustee.

Ted Kowalczyk, Williams, Micale & Wells, Syracuse, N.Y., for Eastern Milk Producers Co-op. Associations, Inc.

Peter Melien, Ronai, Berchem & Moses, Milford, Conn., for Oscar Tang.

## MEMORANDUM AND ORDER

ALAN H.W. SHIFF, Bankruptcy Judge.

Application For Compensation To Special Counsel For The Bankrupt Estate

I.

### BACKGROUND

This matter comes before the court on the application of Slavitt, Connery & Vardamis (Slavitt) for compensation as special counsel to the debtor pursuant to Bankruptcy Rule 219. A brief description of the arrangements for and scope of the legal services rendered will provide the necessary background for the court's analysis.

On May 14, 1969, approximately 10 years before the debtor filed its petition in bankruptcy, Slavitt entered into negotiations with Knudsen Bros. Dairy, Inc., (Knudsen) regarding legal representation and fee arrangements in connection with the condem-

nation of a portion of Knudsen's property. On July 28, 1969, an agreement was reached between Slavitt and Knudsen which, in applicable part, provided that Slavitt would receive a fee of 5% of the state's proposed settlement offer (initial condemnation award) plus 33⅓% of any excess over that amount realized by judgment or settlement after appeal.

On September 28, 1978, the debtor filed its petition under Chapter XI of The Bankruptcy Act. Thereafter the trial was conducted by state trial referees in connection with the condemnation, and on February 20, 1980, the referees entered a memorandum of decision that awarded damages to Knudsen in the amount of $773,400, less the initial condemnation award of $225,000 or a net amount of $548,400.

On March 21, 1980 the debtor was authorized by the court (Trevethan, J.) to employ Slavitt "to represent the Debtor with respect to all post-judgment proceedings, including representation of the Debtor in an Appeal to the Supreme Court of the State of Connecticut" from the judgment. On April 14, 1980, the Connecticut State Commission of Transportation appealed from the judgment to the Connecticut Supreme Court.

On August 11, 1981, the debtor was adjudicated a bankrupt and on September 1, 1981, a trustee was appointed. On May 14, 1982, the appeal from the judgment was withdrawn and a stipulated judgment in the amount of $652,500 to cover, *inter alia,* interest, costs and appraisal fees was entered.

Slavitt has received 5% of the initial taking award and now seeks a fee of $200,000 or approximately 33⅓% of the $652,500 settlement proceeds reduced by certain reimbursements.

The legal services referred to in Slavitt's application consisted of considerable research, review of scientific and legal data, interviews with and preparation for trial of many experts, analysis of documents prepared by the state's experts, preparation for trial, a high degree of trial advocacy during 10 trial days and the preparation of innumerable pretrial and post-trial briefs. Not the least of Slavitt's accomplishments was success in having the theory of damages expanded to include the "reasonable probability" of Knudsen's obtaining a variance of zoning ordinances for future expansion.

## II.

## ISSUES

As noted above, Slavitt requests approximately 33⅓% of the $652,500 increase over the state's initial condemnation award. Slavitt's application was supported by the trustee in bankruptcy who advised the court that he had implicity adopted Knudsen's fee arrangement with Slavitt and was well satisfied with the post petition services and the ultimate stipulated judgment negotiated by Slavitt on behalf of the estate.

Counsel for Eastern Milk Producers Cooperation Association, Inc., a creditor of Knudsen, however, attended the fee application hearing and voiced a vigorous dissent to the contingent fee basis for computing such compensation. Thus, it should be noted that Eastern, the only creditor which objected to Slavitt's application chose to do so on the narrow ground that reasonable compensation should be calculated on some other basis than the contingent fee agreed upon by Slavitt and Knudsen and later adopted by the trustee. The issues then are as follows:

(a) Should the amount of Slavitt's fee be calculated on the basis of a percentage of the settlement proceeds?

(b) If a percentage or contingent fee is appropriate, what is the effect of such a fee on assets of the estate?

## III.

## DISCUSSION

### (a)

### *Contingent Fee*

Under Bankruptcy Rule 219(c) attorneys are allowed "reasonable" compensation, and in determining what is reasonable, courts are instructed to give due consideration "to

the nature, extent and value of the services rendered as well as to the conservation of the estate and the interests of creditors". As stated in this circuit:

> "The principal factors which enter into a determination of what is reasonable are the time spent, the intricacy of the questions involved, the size of the estate, the opposition encountered, the results obtained and the 'economic spirit' of the Bankruptcy Act to curtail unnecessary expenses." *In re Paramount Merrick, Inc.,* 252 F.2d 482, 485 (2d Cir.1958).

In this instance, the contingent fee arrangement not only leads to a reasonable amount, but to deny that amount merely because it stems from a contingent fee arrangement would be inequitable. As mentioned above Slavitt had rendered services more than 10 years before the debtor filed its petition in this court. Since the services were rendered pursuant to a written contingency fee agreement, Slavitt was not required to and did not keep records of the time spent or the attorneys who worked on the various aspects of the eminent domain proceedings. An attempt to reconstruct those elements at this time cannot succeed in producing anything more than sheer speculation. Furthermore, it should be emphasized that the trustee has stated in open court his adoption of the contingent fee arrangements Slavitt negotiated with Knudsen and has urged this court to award a fee on that basis.[1] Thus, in its search for a "reasonable" fee under all of the circumstances, an initial point of departure for the court's consideration should be that agreement. If a percentage of the settlement proceeds is an appropriate means of calculating Slavitt's fee in this case, then the amount calculated may be adjusted up or down by the court so that the final award is "reasonable" under all of the circumstances.

I find that the contingency fee method of calculating Slavitt's fee is appropriate in this case. Indeed, it is highly unlikely that either Knudsen or the debtor could have obtained the services of competent counsel in the highly technical area of eminent domain litigation on any other fee basis.

Having established that a contingent fee is an appropriate basis for calculating Slavitt's fee, I must now turn to the question of whether, under a Rule 219 analysis, the requested fee is reasonable under the circumstances of this case. I find that it is. In this context, it should be noted that a one-third contingency fee is customary in eminent domain litigation in this district. Furthermore, the requested fee reflects the effort and result of Slavitt's services. Thus, no adjustment is necessary under Rule 219 to compute "reasonable" compensation for the debtor's attorney.

(b)

*Effect Of The Contingency Fee*

Slavitt claims and the trustee agrees that its fee applies to and should be paid from the specific fund of the settlement he negotiated on behalf of the estate. Slavitt's claim in that regard is consistent with the rationale of contingent fees wherein an attorney and client agree that if the attorney succeeds in obtaining a fund either by judgment or settlement, the attorney shares in the proceeds to the extent of the percentage agreed upon. Here it is undisputed that Slavitt and Knudsen entered into a written contingency fee agreement. Thus, by Connecticut common law, an equitable attorney's lien attaches to the settlement proceeds which relates back to the fee

1. It should be noted that the state referees issued their judgment prior to the court's order appointing Slavitt special counsel to the debtor. Under such circumstances it might be argued that Bankruptcy Rule 219 is inapplicable. *See In re Prudence Co., Inc.,* 96 F.2d 157 (2d Cir.) *cert. denied,* 305 U.S. 616, 59 S.Ct. 75, 83 L.Ed. 393 (1938) (contingent fee contract was binding on trustees who allowed bankrupt's attorney to continue prosecution of action for the benefit of the estate); *see also In re W.T. Grant Co.,* 620 F.2d 319 (2d Cir.), *cert. denied,* 446 U.S. 983, 100 S.Ct. 2963, 64 L.Ed.2d 839 (1980). But in this instance Slavitt's fee application was presented in the context of Rule 219. Since Slavitt was appointed by this court as special counsel to the debtor and achieved the final settlement thereafter, court scrutiny under Rule 219 is appropriate.

agreement. *Cooke v. Thresher,* 51 Conn. 105, 107 (1883); *In The Matter of Gerald F. Rybnick,* No. 33510 (Ref.D.Conn. Feb. 15, 1967). Such a lien survives bankruptcy. 4B *Collier on Bankruptcy* para. 70.87[2] (14th ed. 1978); *see In The Matter Of Pacific Far Coast Lines,* 654 F.2d 664 (9th Cir. 1981).[2]

IV.

CONCLUSION

Therefore, in accordance with the foregoing memorandum, it is

ORDERED that Slavitt, Connery & Vardamis is allowed a fee in the amount of $200,000 which is to be distributed from the settlement proceeds, and it is FURTHER ORDERED that $9,500 is to be distributed to Herman W. Johnson from the settlement proceeds which amount represents the balance owed him as appraiser.

2. The court in *In re Pacific Far Coast Lines* at 669 summarized the decision in *In re Prudence Co., Inc.,* 96 F.2d 157 (2d Cir.) *cert. denied,* 305 U.S. 616, 59 S.Ct. 75, 83 L.Ed. 393 (1938) on this point as follows:

The "attorney's charging lien survives bankruptcy and hence [an attorney] retained prior to bankruptcy on a contingent fee received [the] full amount of [the] fee even when [the] case concluded after bankruptcy."