**In re PDQ COPY CENTER INC., Debtor.**

**Bankruptcy No. 82 B 20343.
82 Adv. 6329.**

United States Bankruptcy Court, S.D. New York.

Feb. 8, 1983.

Sidney Turner, White Plains, N.Y., for trustee.

George Damashek, White Plains, N.Y., for defendant.

DECISION ON ACTION BY TRUSTEE TO RECOVER FEES COLLECTED BY DISCARDED ATTORNEY AFTER COMMENCEMENT OF THIS CASE.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

This case involves the reach of an attorney's charging lien on proceeds received by the attorney after the filing of a bankruptcy petition, at a time when the trustee in bankruptcy petition, at a time when the trustee in bankruptcy had already dismissed the attorney and had initiated efforts to collect the debt on his own.

## FACTS

1. In January, 1981, George Damashek, Esq., the defendant in this action, was retained as an attorney by PDQ Copy Center, Inc. ("PDQ"), the above named debtor, to collect a claim it had against a certain corporation in the sum of $2003.59 for work, labor and services.

2. The defendant and PDQ agreed that his fee for his legal services would be on a contingency basis; one-third of any recovery, plus disbursements advanced by the defendant in the prosecution of the claim.

3. In March, 1980 the defendant commenced an action in the City Court of White Plains on behalf of PDQ against a principal of the account debtor for the recovery of $2003.59, together with interest. This action resulted in the entry of a judgment on July 13, 1981 in favor of PDQ and against the principal of the account debtor in the sum of $2,303.20, inclusive of interest and costs.

4. On June 4, 1982, PDQ filed in this court its voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The plaintiff is the duly qualified trustee in bankruptcy of PDQ.

5. Sometime after his appointment, the trustee and the defendant had a conversation whereby the defendant was advised that he was no longer authorized to act on behalf of the debtor, PDQ, and that the defendant should not entertain any settlement offers from the judgment debtor. The trustee then proceeded to attempt to effect collection of the indebtedness.

6. Thereafter, the judgment debtor desired to clear all impairments against the title to his home which were listed as of record, so that he could complete a proposed sale. Accordingly, on November 15, 1982, the judgment debtor forwarded to the defendant, as attorney of record for the judgment creditor, PDQ, payment of the judgment debt in the amount of $2,651.58; inclusive of interest to the date of payment.

7. On November 22, 1982, the defendant issued and transmitted to the plaintiff trustee, a check payable to the trustee in the sum of $1,737.72. This sum represents two-thirds of the $2651.58 received by the defendant after deducting $883.86 in accordance with the one-third contingent fee arrangement, plus disbursements of $30.00, for an aggregate fee of $913.86.

## DISCUSSION

While a trustee in bankruptcy may look to his arsenal of so-called strong arm avoidance weapons, so may an attorney seek protection from the trustee's assault by taking refuge behind the shield of the statutory charging lien that many states have enacted for the protection of earned attorneys' fees

Section 475 of the New York Judiciary Law provides, in relevant part:

"From the commencement of an action or special proceeding . . . , or the service

of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come; and the lien can not be affected by any settlement between the parties before or after judgment or final order. The court upon petition of the client or attorney must determine and enforce the lien. 29 McKinney's Consolidated Laws of New York Annotated, Judiciary § 475 (1968)."

Judge Cardozo (later Mr. Justice) in *Matter of Heinsheimer*, 214 N.Y. 361 at 367, 108 N.E. 636 (1915) pointed out that the lien arose not when the funds were produced but rather when the attorney commenced the action out of which the proceeds arose:

"The same statute that gives an attorney a lien on the judgment, gives him a lien on the cause of action, and the lien attaches the moment that the action is begun."

See also *Matter of Montgomery*, 272 N.Y. 323, 6 N.E.2d 40 (1936); *Tillman v. Komar*, 259 N.Y. 133, 181 N.E. 75 (1932); *Beecher v. Vogt Manufacturing Co.*, 227 N.Y. 468, 125 N.E. 831 (1920).

■ The fact that bankruptcy intervened between the time when the attorney commenced the action on behalf of the debtor and when the funds were received by him in satisfaction of the cause of action does not detract from the attorney's right to rely upon the attorney's statutory charging lien; it relates back to the initiation of the action. Judge Ryan in this District, in *In re E.C. Ernst, Inc.*, 4 B.R. 317 at 320 (Bkrtcy.S. D.N.Y.1980) said:

"Since the lien relates back to the commencement of F & G's services (i.e., prepetition), the fact that the debtors each filed a Chapter XI petition does not affect the lien as to those relevant pre-petition activities."

The relation back concept is consistent with the provision in Code § 546(b) that the rights and powers of the trustee under sec-

tions 544, 545 or 549 of the Code are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in the property before the date of such perfection. See *In re Fiorillo & Company*, 19 B.R. 21 (Bkrtcy.S.D.N.Y.1982) where a mechanic's lien related back to the commencement of work so as to defeat a debtor in possession that was asserting its avoiding powers in its capacity as trustee. The attorney need not file or record a charging lien in order to perfect it; the lien takes effect from the time the services were commenced, and a trustee in a subsequent bankruptcy case involving the client takes the property of the estate subject to such lien. *In re Pacific Far East Line, Inc.*, 654 F.2d 664 (9th Cir.1981); *Hanna Paint Mfg. Co. v. Rodey, Dickason, Sloan, Akin & Robb*, 298 F.2d 371 (10th Cir.1962); *In re Knudsen Bros. Dairy, Inc.*, 24 B.R. 418 (Bkrtcy.Conn. 1982); *In re TLC of Lake Wales, Inc.*, 13 B.R. 593 (Bkrtcy.M.D.Fla.1981); *In re E.C. Ernst, Inc.*, 4 B.R. 317 (Bkrtcy.S.D.N.Y. 1980).

### The Discarded Attorney

■ There next remains to be determined the extent of such lien. The defendant reasons that he is entitled to enforce the one-third contingent fee agreed to by PDQ. The contingent fee arrangement was rooted in a contract entered into between the attorney and PDQ before the bankruptcy petition was filed. Therefore, it follows that the trustee's failure to assume the contract within sixty days after the order for relief resulted in the contract being deemed rejected pursuant to Code § 365(d)(1). In any event, the trustee expressly informed the defendant that he was no longer authorized to represent the debtor before the judgment was paid. Although the cancellation of the contingent fee agreement does not deprive the attorney of his fee, it can no longer serve as the measure of compensation.

In *Tillman v. Komar*, supra, the New York Court of Appeals stated 259 N.Y. at page 135, 181 N.E. 75:

"The client is entitled to cancel his contract of retainer but such agreement can-

not be partially abrogated. Either it wholly stands or it totally falls. After cancellation, its terms no longer serve to establish the sole standard for the attorney's compensation. Together with other elements they may, however, be taken into consideration as a guide for ascertaining *quantum meruit*."

Indeed, in *Matter of Montgomery*, supra, the attorney established that the reasonable value of the legal services performed was greater than the agreed upon fee.

Accordingly, the discarded attorney is entitled to apply to this court for a determination of the reasonableness of his fees, based upon the time invested, the nature, the extent and the value of the legal services and the cost of comparable services. The application should be made on notice to the trustee and filed within twenty-one days from this date. The defendant shall hold the $913.86 that he retained subject to further order of this court.

IT IS SO ORDERED.