**In re KLEER–SPAN TRUSS COMPANY, INC., Debtor.**

**KLEER–SPAN TRUSS COMPANY, INC., Plaintiff,**

v.

**Kenneth P. RAY, Esq., Defendant.**

**Bankruptcy No. 84–00316.
Adv. No. 84–0081.**

United States Bankruptcy Court,
N.D. New York.

July 30, 1985.

Stephen D. Gerling, Utica, N.Y., for plaintiff.

Anthony J. LaFache, Utica, N.Y., for defendant.

MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

JUSTIN J. MAHONEY, Bankruptcy Judge.

This adversary proceeding comes before the Court pursuant to a complaint filed by Kleer-Span Truss Company, Inc. (hereinafter, the Debtor) requesting the turnover of funds held by Kenneth P. Ray, Esq. (hereinafter, Ray). Ray filed an answer which controverts the pertinent allegations of the complaint and asserts counterclaims.

The parties submitted stipulations of fact, which are as follows:

1. The Debtor is a successor in interest to Agri-Pole Buildings, Inc. (hereinafter, Agri-Pole).

2. Ray is an attorney duly licensed to practice law and has been since 1977.

3. In 1977, Ray was retained by Agri-Pole to collect a sum of money, approximately $95,000.00, from James Nuckel, CIB Inc. and Parklaw Realty (hereinafter, Nuckel, et al) for failure of these parties to pay Agri-Pole for services ren-

dered in constructing and erecting the Tioga Park Raceway.

4. Ray and Agri-Pole entered into an agreement regarding attorney fees as follows: ⅓ of any settlement if the matter proceeded to trial and ¼ if the matter was settled prior to trial.

5. From the early part of 1977 through approximately May 1, 1979, Ray expended a large number of hours in connection with this litigation.

6. On May 1, 1979, during the trial of the above matter, the parties executed a settlement in favor of Agri-Pole for the sum of $95,000.00. Payment was to be made as follows: $25,000.00 payable within 30 days of the settlement, with the balance to be paid in annual installments over a period of 5 years.

7. Thereafter, the payments were made on an annual basis. Before each payment, requests were made by Ray's office to have the annual payment remitted to his office; however, each request was ignored and apparently, the installments were sent directly to Agri-Pole or the Debtor.

8. On or about April 3, 1984, the President of the Debtor issued a release to Nuckel, et al pending its payment of the last installment.

9. On April 12, 1984, the Debtor filed a petition under Chapter 11 of Title 11, U.S.C. (hereinafter, the Code). Among its scheduled assets was the last payment due from Nuckel, et al. As of the petition date, Ray had received no payments for his attorney services rendered.

10. On or about April 30, 1984, a check in the amount of $14,000.00 representing the last installment due from Nuckel, et al, was received by Ray who retained the payment as a portion of his claimed attorney fees.

## DISCUSSION

The question in this proceeding involves the interrelation between the avoidance powers of the Debtor and Ray's claimed protection of the New York charging lien statute.

Section 475 of the New York Judiciary Law provides, in pertinent part, as follows:

From the commencement of the action, ... the attorney who appears for a party has a lien upon his client's cause of action, claim, or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come; ...

It has been established that the lien under this section arises not when the funds are produced, but rather when the attorney commenced the action from which the funds arose: "The same statute that gives an attorney a lien on the judgment, gives him [or her] a lien on the cause of action, and the lien attaches the moment that the action is begun." *Matter of Heinsheimer,* 214 N.Y. 361, 367, 108 N.E. 636 (1915); *see also, Matter of Montgomery,* 272 N.Y. 323, 6 N.E.2d 40 (1936); *Tillman v. Komar,* 259 N.Y. 133, 181 N.E. 75 (1932); *In re PDQ Copy Center, Inc.,* 27 B.R. 123, 125 (Bankr. S.D.N.Y.1983).

Under this interpretation, Ray's charging lien arose at the outset of the state court proceedings during 1977. Therefore, the question now becomes what effect did the Chapter 11 filing have on the viability of Ray's statutory charging lien?

It is the position of Ray that the statutory charging lien is superior to the Debtor's strong arm powers because the lien relates back to the commencement of the state court action in 1977 and the mere fact that the Debtor filed its petition does not affect the lien vis-a-vis Ray's pre-petition services. In the alternative, Ray asserts he has a valid set-off pursuant to Code § 553.

In contrast, Debtor avers its avoidance powers prevail over the charging lien because as of the date of the petition, the Bankruptcy Court was vested with total authority for fixing compensation of its officers, including Debtor's attorney obtained pre-petition. Debtor argues that where property of the estate is diverted after the filing of the petition, the Code prohibits such self-help, regardless of a state statute. In addition, Debtor claims

Ray is not entitled to any set-off pursuant to Code § 553 as Ray's actions clearly fall within the exception found under § 553(a)(3)(A), (B) and (C).

The Court has considered the positions of both parties and determines the position of Ray is persuasive. The Court relies, in part, on the case of *In re PDQ Copy Center, Inc.*, 27 B.R. 123 (Bankr.S.D.N.Y.1983). In the *PDQ* matter, the facts were very similar to the instant proceeding. Prior to PDQ's Chapter 7 petition, an attorney had been retained by PDQ to collect a claim it had against a certain corporation. PDQ and the attorney agreed the latter's fee would be based on a one-third contingency fee for anything recovered, plus disbursements. In 1980 the attorney commenced an action which culminated in a judgment entered in behalf of PDQ on July 13, 1981. In June 1982, PDQ filed a petition for relief under Chapter 7. Thereafter, another attorney for PDQ was appointed as debtor's attorney who immediately notified the first attorney he was no longer authorized to act in behalf of PDQ and that he should not entertain any settlement offers from the judgment debtor.

Subsequently, the judgment debtor, in an attempt to clear title to his property, sent an apparently unsolicited check to the first attorney who thereby subtracted his one-third fee and submitted the remaining two-thirds to PDQ. The Trustee maintained an action to recover the one-third fee retained by the first attorney.

The court held the mere fact that the Chapter 7 petition had intervened between the time when the first attorney started the collection action on behalf of PDQ and the time when the funds were actually received by him in satisfaction of the action "does not detract from the attorney's right to rely upon the attorney's statutory charging lien; it relates back to the initiation of the action". *Id.* at 125. The *PDQ* court cited Judge Ryan's decision in the case of *In re E.C. Ernst, Inc.*, 4 B.R. 317 (Bankr.S.D.N.Y.1980). Although this case involved the Bankruptcy Act, it appears the Code has not altered its holding. The *Ernst* court stated, "[S]ince the [attorney's charging] lien relates back to the commencement of [the attorney's] services (i.e. pre-petition), the fact that the debtors each filed a Chapter XI petition does not affect the lien as to those relevant pre-petition activities." *Id.* at 320.

The *PDQ* court also noted the interplay of Code § 546(b) which in effect provides that the voidable lien powers of the debtor under § 544 are subject to any generally applicable state law which permits perfection of an interest in property to relate back and be effective against an entity which acquires rights in the property before the date of such perfection.

Therefore, as New York law provides that an attorney's charging lien attaches to a judgment, verdict or order and that the effective date of the lien relates back to the commencement of the attorney's services, Code § 546(b) will protect Ray's charging lien from being invalidated and the Debtor's interest is subordinate to Ray's lien.

Although the Court makes the finding that the Debtor's interests are subordinate to Ray's statutory charging lien, pursuant to Code § 329(b) and Bankruptcy Rule 2017(b), the Court retains jurisdiction to determine the reasonableness of the amount of the attorney fees charged by Ray.

Accordingly, Ray is directed to apply to the Court for a determination of the reasonableness of his fees, based upon contemporaneous time records which reflect the time invested, the nature, extent and value of the legal services rendered. The application must be made on notice and Ray shall hold the funds that he retained subject to further order of the Court.

In view of the above determination, the Court will not address Ray's alternative position concerning an alleged set-off right.

IT IS SO ORDERED.