In re John DE BERRY, Debtor.

Ira S. GREENE, as Trustee of John De Berry, Debtor,

v.

Sydney SCHMUKLER, Defendant.

Bankruptcy No. 180–05774–353.
Adv. No. 185–0204.

United States Bankruptcy Court,
E.D. New York.

April 22, 1986.

David Wander, of counsel; Gainsburg, Gottlieb, Levitan, Greene & Cole, New York City, for trustee.

Gregory J. Parisi, and Randi Pincus, Hogan, Jones & Parisi, P.C., New York City, for defendant.

## DECISION AND ORDER

JEROME FELLER, Bankruptcy Judge.

An adversary proceeding was initiated on December 3, 1985 by the Trustee, Ira Greene, (hereinafter the "Trustee"), against the attorney for the Debtor, Sydney Schmukler (hereinafter "Defendant"). The complaint seeks a turnover order pursuant to 11 U.S.C. § 542(a) of $25,000, which sum represents the settlement of a personal injury action commenced on the Debtor's behalf prior to the inception of the bankruptcy case and an accounting for

those settlement proceeds.[1] An answer and amended answer were interposed by the Defendant and a trial was held before this Court on February 3, 1986. At the conclusion of the trial, the matter was taken under advisement and the parties were instructed to submit post trial memoranda of law. Having examined the evidence, testimony, and pre and post trial memoranda, and having considered the arguments of counsel, the Trustee's complaint for a turnover order is dismissed. This Decision constitutes the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

### FACTS

The Defendant, Sydney Schmukler, is a practicing attorney in the State of New York. Prior to his filing a voluntary Chapter 13 petition on behalf of the Debtor, Mr. Schmukler was retained by the Debtor to assume the prosecution of a personal injury action commenced in Supreme Court, Kings County, on May 28, 1980, by attorneys, Sanders & Gutman. This action (*Frieda De Berry and John De Berry v. Oscar Moore,* Index # 3634/80) was commenced as a result of a motor vehicle accident which occurred on October 6, 1979, in which the Debtor was severely injured.

At that time, John De Berry, the Debtor, while operating a motorcycle was struck by a motor vehicle driven and owned by one Oscar Moore. As a result of the accident, Mr. De Berry suffered serious injuries, including fractures of the pelvis and multiple internal injuries requiring exploratory laparatomy and colostomy. He also suffered injury to the right thigh requiring an ex-

ploratory operation and the installation of a Hoffman apparatus. Neurological injury to the right leg resulted in a permanent foot drop and limp, necessitating a leg brace and use of auxilliary crutches. In sum, Mr. De Berry suffered partial paralysis of the right leg requiring continual therapy and was rendered permanently disabled. *See,* Bill of Particulars in personal injury action annexed as Exhibit A to Defendant's Post Trial Memorandum. The Defendant was retained by De Berry in the personal injury action on September 23, 1980 (Defendant's Ex. C) pursuant to a contingent fee retainer agreement (Defendant's Ex. B).[2]

On September 26, 1980, the Defendant filed a voluntary Chapter 13 petition on behalf of the Debtor (Defendant's Ex. D). On motion of the Debtor, the case was later converted to a case under Chapter 7 by order of the Court dated December 22, 1980. A Chapter 7 petition was filed by the Defendant on behalf of the Debtor on February 3, 1981 (Plaintiff's Ex. 2) and Ira Greene, the Plaintiff herein, was appointed Trustee by order of the Court on February 5, 1981.

Listed in the Summary of Debts and Property attached to the Chapter 7 petition, under contingent and unliquidated claims, was the action for personal injuries whose value was classified as undeterminable and a related contingent claim for disability benefits whose amount was also classified as undeterminable. Among other things, listed on the Debtor's Schedule B–4 as exempt property was $7,500.00, which represented the "settlement or judgment for Debtor's personal injury action."[3] There

---

1. The first cause of action in the complaint was for an accounting, but that was satisfied by the testimony and other evidence presented by the Defendant and the Trustee withdrew this cause of action (Trial Transcript at 95). *See, infra* at 894.

2. The Defendant's retainer agreement stated that the terms of compensation were as per the terms of the retainer executed between the Debtor and his wife and the previous attorneys, Sanders & Gutman (Defendant's Ex. B). This original retainer, (Defendant's Ex. A), entitled attorney to:

(A) Fifty per cent of the first one thousand dollars of the sum recovered;
(B) Forty per cent of the next two thousand dollars of the sum recovered;
(C) Thirty-five per cent on the next twenty-two thousand dollars of the sum recovered;
(D) Twenty-five per cent on any amount over twenty-five thousand dollars of the sum recovered.

3. Apparently ignorant of the applicable statute, 11 U.S.C. § 522, Defendant claimed on behalf of the Debtor both federal and state exemptions. However, prior to the enacting of "opting out"

was no claimed exemption for lost wages. The Debtor was granted a discharge on June 10, 1981 (Defendant's Ex. R).

The Trustee was aware of the pending personal injury action, by his own admission, at least as early as the first Section 341 meeting held in March 1981 (Trial Transcript at 98). Nonetheless, the Defendant was never retained by the Trustee pursuant to a Court order. Nor did the Trustee ever seek authorization to retain other counsel to represent the estate in the personal injury action. When asked why the Trustee did not file an application with the Court for authorization to retain Defendant, the attorney for the Trustee asserted that the size of this estate did not merit the cost of such an application and Defendant was familiar with the personal injury action (Trial Transcript at 99, 102). Trustee's counsel further indicated that 11 U.S.C. § 327 does not require the Trustee to substitute a professional when there was one already retained, particularly since Defendant seemed professionally competent to handle the personal injury action (Trial Transcript at 102–103). Thus, Defendant continued to represent the Debtor in the personal injury action with the knowledge and acquiesence of the Trustee.

The personal injury action was settled with the insurance company by the Defendant in June 1981 for $25,000.00, the value of the insurance policy held by the driver of the automobile. The settlement was approved by the Debtor (Trial Transcript at 32–33). The Defendant received the $25,000 in settlement of the litigation and in October 1981 distributed said sum as follows, i) $16,032.00 to the Debtor for his damages; ii) $5,568.00 to himself for services rendered pursuant to the contingent fee retainer agreement; iii) $2,500 to Sanders & Gutman, the attorneys for whom De-

fendant was substituted on September 23, 1980 in the personal injury action, for services rendered; and iv) $900 to Frieda De Berry, the Debtor's wife, for damages to the motorcycle owned by Mrs. De Berry and operated by the Debtor at the time of the accident.[4]

The Trustee never expressly approved the settlement. Nor was bankruptcy court approval of the settlement ever obtained by Defendant.[5] However, the Defendant testified that the $25,000 settlement was the best obtainable under the circumstances for essentially three reasons. First, the defendant, Oscar Moore, in the personal injury action maintained an insurance policy with liability limits of $25,000 and carried no excess insurance. (Trial Transcript at 31). Second, it would have been impossible to enforce a personal judgment against Mr. Moore, a person of limited means (Trial Transcript at 31–32). Finally, the Debtor may well have been a major cause of the tragic accident in that he was roaring along at between 80 to 90 miles per hour when he hit the rear of the other vehicle at an intersection (Trial Transcript at 24, 85). The Trustee presented no evidence whatsoever indicating any possible inadequacies or unfairness regarding the $25,000 settlement.

Although the Defendant was not knowledgeable as to the requirements for settlement of the personal injury action under the bankruptcy law, he did call the Trustee within two weeks of having settled the matter and advised the Trustee's law clerk with whom he spoke of the settlement (Trial Transcript at 38–39). The Trustee never responded to the Defendant's telephone call, leaving a fair inference that he, at least, implicitly approved the settlement.

It was abundantly clear from the testimony and evidence that there was an al-

---

legislation by New York on September 1, 1982, New York debtors were entitled under 11 U.S.C. § 522(b) to only claim either the federal exemptions under 11 U.S.C. § 522(d) or the state exemptions under New York law.

**4.** Although the check from the insurance company was for $900, she received only $600 be-

cause the balance constituted the Defendant's fee.

**5.** *See,* Bankruptcy Rule 9019(a), which provides in relevant part:
> On motion by the trustee and after a hearing on notice to ..., the court may approve a compromise or settlement.

most total lack of communication between the parties (Trial Transcript at 38–39, 73–75, 81, 104–106). The Trustee was unwilling to speak with Mr. Schmukler directly and Mr. Schmukler, in turn, refused to deal with the various law clerks who contacted him from the Trustee's office. In any event, the Trustee waited more than four years after the events complained of, all of which occurred in June and October 1981, and commenced the instant lawsuit in December 1985 after conducting a Rule 2004 examination of Defendant in July 1985. The Debtor's whereabouts are presently unknown.

### DISCUSSION

■ Property of the estate is defined broadly in 11 U.S.C. § 541 to include all legal or equitable interests of a debtor in property as of the commencement of a bankruptcy case. The personal injury action and any proceeds realizable therefrom constituted an interest in property held by the Debtor at the commencement of the case and was accordingly property of the estate. *H.R.Rep. No. 595, 95 Cong., 1st Sess. at 175 (1977),* U.S.Code Cong. & Admin.News 1978, pp. 5963, 6135; *United States Trustee v. Mucelli, (In re Mucelli),* 21 B.R. 601 (Bankr.S.D.N.Y.1982); *see* also, *Ryen v. Terry, (In re Terry),* 56 B.R. 713, 715 (Bankr.W.D.N.Y.1986).

■ The Trustee claims that the entire $25,000 realized in settlement of Debtor's personal injury action is property of the estate and should therefore be turned over under 11 U.S.C. § 542(a). The sum of $900 was the settlement of Freida De Berry's property damage claim for the motorcycle owned by her and damaged in the accident. Accordingly, the $900 was never property of the Debtor and is not recoverable by the Trustee as property of the estate. Contrary to the record of the trial, the Trustee belatedly asserts in his post-trial memorandum that the motorcycle was owned by the Debtor and not the Debtor's wife. Since no evidence was adduced at the trial in support of such contention, it has no probative value.

The remaining $24,100 transferred or retained by Defendant will be examined separately to determine if the Trustee is entitled to a turnover of those funds.

A. *The Apportionment of $16,032 to the Debtor, John De Berry*

Defendant distributed $16,032 of the $25,000 in settlement proceeds to the Debtor for his damages in October 1981. The Trustee seeks a turnover of these funds under 11 U.S.C. § 542(a). Section 542(a), in pertinent part, provides:

... [A]n entity, other than a custodian, *in possession, custody, or control,* during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, ... such property.... [Emphasis Added].

The clear language of the statute requires actual or constructive possession by a defendant as a fundamental predicate to a trustee's turnover rights. This is not a new requirement imposed by the Bankruptcy Code. *In re Bill F. Riding,* 44 B.R. 846, 850–54 (Bankr.D.Utah, C.D.1984). Nearly forty years ago, the Supreme Court of the United States, in a case decided under the now repealed Bankruptcy Act, stressed that a turnover request essentially partakes the characteristics of a proceeding in rem. *Maggio v. Zeitz,* 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948). In *Maggio v. Zeitz, supra,* 333 U.S. at 63, 68 S.Ct. at 405, the Supreme Court elaborated on the basis of turnover, stating:

... [T]he theoretical basis for this remedy is found in the common law actions to recover possession—detinue for unlawful detention of chattels and replevin for their unlawful taking—as distinguished from actions in trespass or trover to recover damages for the withholding or for the value of the property. Of course the modern remedy does not exactly follow any of these ancient and often overlapping procedures, but the object—possession of specific property—is the same. The order for possession may extend to proceeds of property that has been dis-

posed of, if they are sufficiently identified as such. But it is essentially a proceeding for restitution rather than indemnification, with some characteristics of a proceeding in rem; the primary condition of relief is possession of existing chattels or their proceeds capable of being surrendered by the person ordered to do so. It is in no sense based on a cause of action for damages for tortious conduct such as embezzlement, misappropriation or improvident dissipation of assets.

Under the former Bankruptcy Act, a trustee had the burden of proving that the property sought to be turned over is in the possession or control of the defendant at the time the turnover proceeding is commenced. 2 *Collier on Bankruptcy*, ¶ 23.10 at 573 (14th ed. 1976). The plain meaning of 11 U.S.C. § 542(a) and the very nature of a turnover proceeding teaches that a trustee must still sustain such a burden under the Bankruptcy Code. *See, McGraw v. Scott (In re Bill Beckwith)*, 44 B.R. 659 (Bankr.N.D.Ohio, W.D.1984); *Williams v. Galster (Matter of Galster)*, 38 B.R. 72 (Bkcy.W.D.Mo.1984). In addition, apart from the requirement of showing actual or constructive possession, the trustee must prove by clear and convincing evidence that he is entitled to a turnover order. *Oriel v. Russel*, 278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419 (1929).

■ There is an exception to the requirement that the defendant have possession of the property which emerged as a result of the Supreme Court's decision in *May v. Henderson*, 268 U.S. 111, 45 S.Ct. 456, 69 L.Ed. 870 (1925). The lack of possession is not an obstacle which will prevent the court from ordering a turnover of property, where there is a person or entity in a fiduciary relationship with the debtor and such person or entity intentionally diverts the property in breach of that relationship. *See, South Falls Corporation v. Rochelle*, 329 F.2d 611 (5th Cir.1964); *Booth v. Manufacturers Hanover Trust Company, (Matter of Cafes International, Ltd.)*, 13 B.R. 155 (Bankr.S.D.N.Y.1981). In the

*May* case, *supra*, there was an assignment for the benefit of creditors made to two assignees. One of the assignees was the president of a bank to which the assignor was indebted on a promissory note and with whom the assignor had a bank account. Subsequently, the assignor became a bankrupt. This assignee directed that funds of the assignor on deposit with the bank be applied to the note to decrease the amount of indebtedness both before and after the filing of the petition. The trustee prevailed and the Supreme Court affirmed the turnover order even though the defendants claimed not to have possession of the property. The Supreme Court characterized the transactions of the defendants as, "[A] clumsy, ineffectual, and fraudulent effort to divert the funds of the bankrupt to the payment of a favored creditor. *May v. Henderson*, *supra*, 268 U.S. at 119, 45 S.Ct. at 460.

■ In this case, Defendant distributed the $16,032 to the Debtor more than four years ago and no evidence whatsoever was presented to this Court of an intentional diversion of such funds by the Defendant which would warrant invoking an exception to the possession requirement. Insofar as the record discloses, Defendant distributed the $16,032 of settlement proceeds in good faith to his seriously injured client, believing the transfer was permissible because the client had already obtained his discharge in bankruptcy.

The Trustee was not without recourse regarding possible recovery of the $16,032 or at least a significant portion thereof. Had the Trustee acted in a timely manner the transfer may have perhaps been avoided pursuant to 11 U.S.C. § 549(a) as an invalid postpetition transfer. Furthermore, the Trustee may have succeeded had he brought a turnover proceeding under 11 U.S.C. § 542(a) against the Debtor in a timely manner. However, the Debtor disappeared and an action under Section 549(a) became time barred by virtue of the two year statute of limitations contained in 11 U.S.C. § 549(d)(1). Thus, the Trustee brought this action under 11 U.S.C.

§ 542(a) and, as indicated above, ran into the barrier of the possession requirement underlying turnover actions.

The Pre and Post Trial Memoranda submitted by the parties are cluttered with meaningless surplusage and esoterica relating to the law of exemptions in dealing with the $16,032 distributed to the Debtor. The Court deems it appropriate to comment briefly on this matter, as it typifies the poor quality of the memoranda and highlights the Court's disappointment with those submissions. The Trustee objects to the Debtor's claimed exemption of $7,500 of the $16,032 sum. The Defendant claims an additional exemption to cover the difference between the $7,500 and $16,032 sum. The Trustee also protests such additional exemption claim on substantive grounds. Amazingly, the Trustee apparently forgot that the time for him to object to claimed exemptions passed years ago and the Defendant was oblivious to his lack of standing to claim exemptions. Bankruptcy Rule 403 [now Bankruptcy Rule 4003].

B. *Retention of $5,568 By Defendant and Transfer of $2,500 to Sanders & Gutman for Professional Services Rendered*

■ The $25,000 in settlement proceeds of the Debtor's state court personal injury action was further allocated by Defendant in October 1981 to the attorneys who represented the Debtor in the litigation. Defendant retained $5,568 as his fee under a prepetition contingent fee retainer agreement and distributed $2,500 to Sanders & Gutman for their services in the personal injury action prior to his substitution as Debtor's counsel on September 23, 1980.

The Trustee also seeks a turnover of these funds pursuant to 11 U.S.C. § 542(a).

The survivability and enforceability of a prepetition contingent fee retainer agreement after inception of a bankruptcy case is well established law in this Circuit, where, as here, the Trustee did not intervene as party plaintiff in the prepetition litigation and permitted Debtor's counsel to pursue that litigation postpetition. *In re Prudence Co.*, 96 F.2d 157 (2d Cir.1938). There is nothing in the Bankruptcy Code or its legislative history undermining the applicability of this general rule developed under the former Bankruptcy Act. It is true that the court may under certain circumstances scrutinize a contingent fee retainer agreement to prevent overreaching or unfairness. *See*, 28 U.S.C. § 1334(d), 11 U.S.C. § 328. In this case, however, the Trustee has made no showing whatsoever warranting departure from the general rule governing the enforceability Defendant's prepetition contingent fee retainer agreement. This Court declines the Trustee's invitation to engage itself in a futile exercise of reviewing fees retained under a valid prepetition contingent fee retainer agreement.

■ Moreover, Defendant, under New York law, has an attorney's statutory charging lien for his fees which attached to the personal injury cause of action and to any proceeds therefrom. New York Judiciary Law § 475.[6] Clearly, Defendant's charging lien survives bankruptcy.[7] *In re Prudence Co., supra; In re PDQ Copy Center, Inc.*, 27 B.R. 123, 125 (Bankr.S.D.

---

6. Section 475 of the New York Judiciary Law provides, in relevant part:

    From the commencement of an action, ... the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final 'order or determination....

7. The Trustee argues that Defendant's contingent fee retainer agreement is an executory con-

tract which was rejected under 11 U.S.C. § 365(d)(1) in that the Trustee did not assume that contract within 60 days after inception of the bankruptcy case. This contention is without merit. The Trustee allowed the personal injury action to be prosecuted and settled by Defendant. At all relevant times, he retained the right to discharge Defendant from the representation and pursue the litigation in his own right. Former Bankruptcy Rule 610 [Now Bankruptcy Rule 6009]. The Trustee opted not to do so and, in fact, acquiesced to Defendant's representation. He surely cannot now be heard that the contingent fee retainer agreement was rejected.

N.Y.1983); *In re E.C. Ernst, Inc.*, 4 B.R. 317, 320 (Bankr.S.D.N.Y.1980). And, the lien attaches to the proceeds of settlement the same as it would attach to a judgment. *Reisman v. Theodore*, 111 A.D.2d 227, 489 N.Y.S.2d 263 (1985).

■ Furthermore, the Trustee in requesting a turnover from Defendant under 11 U.S.C. § 542(a) of the $5,568 portion of settlement proceeds representing the latter's fees is, in effect, seeking property upon which a prior security interest attached. The turnover of such property to which a security interest has attached, however, would seem to require that the Trustee provide Defendant with some form of adequate protection. 11 U.S.C. § 363(e); *Cf, United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983); *See*, 11 U.S.C. § 361 (Examples of adequate protection). The Trustee has made no offer of adequate protection; nor is he able to make such an offer in this no asset Chapter 7 case.

■ The Trustee's request for a turnover of the $2,500 that Defendant transferred to the predecessor attorneys in the Debtor's personal injury action, Sanders & Gutman, also fails for a variety of reasons. Those funds are no longer in the custody, control or possession of Defendant. *See*, *supra*, pp. 895–96. Furthermore, Defendant distributed the $2,500 to Sanders & Gutman for the value of their services under a statutory charging lien recognized by state law.

An attorney who is dismissed without any misconduct, or who voluntarily withdraws for just cause, is allowed a charging lien under § 475 of the Judiciary Law of New York upon the proceeds of a lawsuit for the value of services rendered. *Teichner by Teichner v. W & J Holsteins Inc.*, 64 N.Y.2d 977, 478 N.E.2d 177, 489 N.Y. S.2d 36 (Ct.App.1985); *Kyle v. Kyle*, 94 A.D.2d 866, 463 N.Y.S.2d 584 (1983); *Paulsen v. Halpin*, 74 A.D.2d 990, 427 N.Y.S.2d 333 (1980). The Trustee presented no evidence as to misconduct by Sanders & Gutman or any proof at all directed to why Defendant was substituted for that law firm in the Debtor's personal injury action. In sum, like Defendant, the law firm of Sanders & Gutman had a valid and enforceable statutory charging lien on the settlement proceeds of the personal injury litigation.

### C. *Trustee's Delay in Bringing Suit*

■ Defendant is hardly to be commended for the manner in which he settled the personal injury action. Nor should he be praised for his unilateral distribution of the settlement proceeds. On the other hand, the Trustee waited more than four years before initiating this action to recover property of the estate. Unable to bring a lawsuit under 11 U.S.C. § 549(a) governing the avoidance of postpetition transfers because of the two year statute of limitations contained in 11 U.S.C. § 549(d)(1), the Trustee was constrained to sue under 11 U.S.C. § 542(a)—the turnover provision.

Undeniably, Section 542(a) has no express period of limitation within which one must sue for a turnover. This does not mean that a trustee has unbridled discretion to sue under Section 542(a) at any time he wishes or deems convenient. Good reason and sound practice dictate that actions under § 542(a) be commenced within a reasonable period of time. The bankruptcy courts are thereby spared from the litigation of stale claims and parties are not put to the difficult burden of litigating after memories have faded, witnesses have disappeared and evidence lost. The more than four years that the Trustee herein waited to sue is well beyond any common sense definition of reasonableness.

Equitable principles underly the administration of bankruptcy cases. *Bank of Marin v. England*, 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966); *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); *In re Beck Industries*, 605 F.2d 624, 634 (2d Cir.1979). The maxim that "equity aids the vigilant, not those who slumber on their rights" is an important equitable principle designed to promote diligence and prevent enforcement of stale claims. 2 *Pomeroy*, Equity Jurisprudence

§ 418 (5th ed. 1941). The Trustee ran afoul of this time tested maxim and may not invoke 11 U.S.C. § 542(a) in an attempt to undo his tardiness.

## CONCLUSION

For all of the foregoing reasons, the Trustee is not entitled to a turnover from Defendant of the $25,000 settlement of the Debtor's personal injury action. Accordingly, the Trustee's complaint under 11 U.S.C. § 542(a) is dismissed.

IT IS SO ORDERED.