**In re VAN SANFORD TOOL & DIE CO., INC., Debtor.**

**Bankruptcy No. 80–00429.**

United States Bankruptcy Court, N.D. New York.

April 15, 1987.

Michael L. Supnik, Syracuse, N.Y., trustee.

Coulter, Fraser, Ames, Bolton, Bird & Ventre, Syracuse, N.Y., Debtor's pre-petition Counsel; Richard N. Ames, of counsel.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

In this Chapter 7 case, filed pursuant to 11 U.S.C. §§ 101–151326 ("Code"), the Trustee has made application on notice to pay a claim of attorney Richard N. Ames, Esq. and the law firm of Coulter, Fraser, Ames, Bolton, Bird & Ventre, Esqs. (collectively "Ames") for legal services provided the Debtor pre-petition, and unrelated to the bankruptcy proceeding. The application is uncontested, yet the Court reserved decision because the issues raised by the Trustee's application were previously considered in an unreported decision of this District.

---

**1.** Debtor's case was converted to a Chapter 7

## FACTS

The following facts are taken from the Trustee's application.

Ames was retained by Van Sanford Tool & Die Co., Inc. ("Debtor") some time prior to the filing of Debtor's Chapter 11 petition in April, 1980.[1] Specifically, Ames was retained to collect an account receivable due Debtor from Stellex Industries, Inc., f/k/a Meson Electronics Co., Inc. ("Stellex"). Ames successfully handled the collection, obtaining a judgment against Stellex in the amount of $6,503.18 on February 9, 1979 in New York Supreme Court.

Before the judgment could be enforced, Stellex filed a Chapter 7 bankruptcy petition, and the Debtor was consequently stayed from taking further collection efforts. Ames prepared and filed a Proof of Claim in the Stellex case for the judgment balance. The Debtor thereafter filed its petition for Chapter 11 relief on April 7, 1980.

On January 5, 1983, the Trustee in Stellex case paid to Debtor's estate a dividend of $1,964.49 as payment on the Debtor's claim.

Ames has requested payment of its attorney's charging lien on these sums. Ames contends its fee was agreed with Debtor to be on a one-third contingency percentage on all sums collected, plus disbursements. One-third of the monies paid from the Stellex estate is $654.83; in addition, Ames seeks disbursements of $22.95. The Trustee recommends payment to Ames of $677.78 from the Debtor's estate as a secured claim.

## DISCUSSION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This matter is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A) & (B).

Issues similar to those presented herein were presented in the unreported decision of *Kleer-Span Truss Co., Inc. v. Ray (In re Kleer-Span Truss Co., Inc.)*, 76 B.R.

---

case on November 10, 1980.

30 (Bankr.N.D.N.Y.1985) (Mahoney, B.J.).[2] In *Kleer-Span,* an attorney represented the debtor's predecessor in interest on a collection action, which sought payment for services rendered. The attorney's compensation was agreed to by formal contingency arrangement, with the fee to be one-third of sums collected if the matter proceeded to trial, and one-quarter if settled prior to trial. A settlement of $95,000.00 in debtor's favor was reached during trial; the defendant was to make initial payment of $25,000.00 within thirty days, followed by annual installments on the balance over a five year period. The initial payment was made, with the judgment debtor then making payments of $14,000.00 per annum directly to the debtor, ignoring debtor's counsel's requests that payment be made to his office.

On April 3, 1984, debtor's president executed a release to the defendant, pending payment of the last settlement installment. On April 12, 1984, debtor filed a Chapter 11 bankruptcy petition. On or about April 30, 1984, debtor's counsel received the last settlement payment of $14,000.00, intending to retain the same as a portion of his claimed attorney's fees. The debtor then commenced an adversary proceeding seeking return of this money.

Judge Mahoney recognized that attorneys in New York state are statutorily entitled to a lien upon the proceeds of settlement or judgment entered on behalf of their client.[3] However, Judge Mahoney ruled that the Court retained the jurisdiction to determine the reasonableness of the fees charged by a debtor's counsel based upon Code § 329(b) and Fed.R.Bankr.P. 2017(b). Debtor's counsel was, therefore, instructed to apply to the Court for a determination of his fees, based upon submitted contemporaneous time records.

The Court believes Judge Mahoney properly recognized the nature of the interest held by debtor's counsel in *Kleer-Span.* The attorney's charging lien arising from application of § 475 of the Judiciary Law attaches at the moment an action is begun. *Matter of Heinsheimer,* 214 N.Y. 361, 367, 108 N.E. 636 (1915) (Cardozo, J.); *Tauber v. Chelli & Bush, P.C. (In re Territo),* 35 B.R. 343, 345 (Bankr. E.D.N.Y.1983); *In re P.D.Q. Copy Center,* 27 B.R. 123, 125 (Bankr. S.D.N.Y.1983); *In re E.C.Ernst, Inc.,* 4 B.R. 317, 320 (Bankr. S.D.N.Y.1980). The lien, because it is statutory, arises automatically and not because of the parties' agreement or court action. *In re Thorogood,* 22 B.R. 725, 272 (Bankr.E.D.N.Y. 1982). *See also* Code § 101(38); S.Rep. No. 989, 95th Cong., 2d Sess. 27 *reprinted in* 1978 U.S.Code Cong. & Ad.News, 5787, 5812–13; H.R.Rep. No. 595, 95th Cong., 1st Sess. 314 *reprinted in* 1978 U.S. Code Cong. & Ad. News 5963, 6271. The lien survives the filing of a client's bankruptcy petition. *In re Prudence Co.,* 96 F.2d 157, 160 (2d Cir.) *cert. denied sub nom. McGarth v. Davison,* 305 U.S. 616, 59 S.Ct. 75, 83 L.Ed. 393 (1938); *Greene v. Schmukler (In re DeBerry),* 59 B.R. 891, 897 (Bankr.E.D.N.Y.1986); *In re P.D.Q. Copy Center, Inc., supra,* 27 B.R. at 125; *In re E.C. Ernst, supra,* 4 B.R. at 320. Consequently, the lien remains against property received by the trustee during the course of his administration of the estate. *In re P.D.Q. Copy Center, supra,* 27 B.R. at 125 and cases cited therein.

In *Territo,* attorneys for the debtor received their one-third contingency fee plus expenses from a personal injury settlement gained on debtor's behalf. Within 90 days of the settlement and payment to the attorneys, the debtor filed a Chapter 7 bankruptcy petition. The trustee sought to avoid the payment as a preferential transfer (Code § 547). A creditor intervened in the trustee's motion, conceding that the

---

**2.** The Court has specific knowledge of the facts of this case as I represented the debtor-plaintiff.

**3.** Section 475 of the New York Judiciary Law (McKinney 1983) provides in relevant part:
From the commencement of an action, ... the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come; ...

attorneys had a lien under New York statutory law, but requesting the bankruptcy court to measure the reasonableness of the fee by evaluating the services rendered. After noting that Code § 545 was inapplicable to the facts, and that the contingency agreement fell within New York Appellate Division rule guidelines,[4] Judge Duberstein held there to be no basis for an examination of the *quantum meruit* of the contingency fee. *Id.* at 346.

*Territo* is distinguishable from the present case, involving as it did a contingency fee agreement for a personal injury claim. Judge Duberstein specifically refused to engage in a review of the reasonableness of the attorney's charge, for he recognized that the Code deferred to local policy with respect to statutory liens. *Id.* at 345. As the State of New York had adopted specific guidelines for personal injury contingency fee arrangements, and as the agreement under consideration fell within those parameters, there was no reason for the bankruptcy court to "interfere with an obvious and important public policy underlying this state's scheme of compensation for attorneys who prosecute negligence actions." *Id.* at 346.

The Court agrees with the result reached by Judge Duberstein, and were the present case factually akin to that in *Territo*, the Trustee's payment to Ames would be approved. However, Ames' statutory lien attaches to monies received by virtue of a collection action on a debtor's accounts receivable. For this type of action, the State of New York has adopted neither statute nor rule of court which serve as a guidepost for review of the reasonableness of a contracted contingency fee agreement.

Further, neither Ames nor the Trustee has ever offered any proof as to the contingency agreement itself, beyond than to assert to what extent its terms applied. In this regard, the present case is much like that presented the United States Court of Appeals for the Seventh Circuit in *Bitker v.*

*Whyte, Hirschboeck, Minahan, Harding & Harland (Matter of Land Investors, Inc.)*, 544 F.2d 925 (7th Cir.1976). In *Land Investors*, two law firms which had represented a debtor in litigation commenced prior to the bankruptcy filing, but in which a judgment was rendered on debtor's behalf post-petition, sought to uphold claims to the proceeds based on a contingency fee agreement. The law firms and the debtor had not memorialized their agreement in writing, relying instead upon an oral arrangement.

When the trustee sought to have the law firms turn over the entire sums they had withheld, the bankruptcy court, utilizing its summary jurisdiction, independently determined the fee to which the law firms were entitled. The district court affirmed this decision.

On appeal, the law firms argued that the bankruptcy court had improperly utilized summary jurisdiction, and in any event, the bankruptcy court improperly determined the amount of attorney's fees contrary to the evidence.

The Court of Appeals first determined that the bankruptcy court's use of summary jurisdiction under § 2(a)(7) of the former Bankruptcy Act, 11 U.S.C. § 11(a)(7) was appropriate. But more importantly, the Court of Appeals upheld the bankruptcy court's authority to determine the extent of the firm's lien on a reasonable fee basis.[5] The Court of Appeals recognized that

> the record fully supports the findings of the courts below that while a contingent fee was agreed to, the precise extent thereof was not. In these circumstances the bankruptcy court had no real alternative to determining a reasonable contingent fee for [the litigation]. It was not obliged to accept on their face [the law firms'] conclusions as to the amount of such a fee.

*Id.* at 932. Because the law firms failed to demonstrate a contingent fee percentage agreement, the Court of Appeals distin-

---

4. SUP.CT.APP.DIV. § 603.7(3) (1st Dep't), § 691.20(c) (2d Dep't), § 806.13(a) (3 Dep't), § 1022.31(a) (4th Dep't) (McKinney N.Y.Rules 1987).

5. The bankruptcy court had, as the Court has done herein, expressly recognized and preserved the law firms' attorney's lien for services rendered.

guished the case from the Second Circuit Court of Appeals decisions of *Sherman v. Buckley,* 119 F.2d 280 (2d Cir.) *cert. denied,* 314 U.S. 657, 62 S.Ct. 110, 86 L.Ed. 527 (1941) and *In re Prudence Co., Inc., supra.*

 Unlike the former Bankruptcy Act and its enabling provisions, present law clearly recognizes the Court's jurisdiction and authority to determine the validity, extent and priority of liens. *See* 28 U.S.C. § 157(b)(2)(I); Code § 506. Consequently, and because the present proof is insufficient to support Ames claim, that party is directed to submit evidence of its fee agreement with the Debtor, should it exist, and further apply to the Court for a determination of the reasonableness of its fees, based upon contemporaneous time records reflecting the time invested, the nature, extent and value of the legal services provided.

IT IS SO ORDERED.