In re BROWN BROTHERS, INC., Debtor.

Frank D. McALPINE, Appellant,

v.

COMERICA BANK–DETROIT, Appellee.

No. 1:90–CV–433.

United States District Court, W.D. Michigan.

March 13, 1991.

Frank D. McAlpine, Paula J. Manderfield & Assoc., Lansing, Mich., for appellant and debtor.

James G. Vantine, Jr., Miller, Canfield, Paddock & Stone, Kalamazoo, Mich., for appellee.

Frank D. McAlpine, Lansing, Mich., for Jack I. Wein, trustee.

## OPINION

ENSLEN, District Judge.

This case is before the Court on appeal from the bankruptcy court's order awarding attorney fees to Frank D. McAlpine, attorney for appellant's trustee, in the amount of $38,000. This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158. The bankruptcy court's findings of fact should not be set aside unless clearly erroneous. Bankruptcy Rule of Procedure 8013.

### Facts

Brown Brothers, Inc. (debtor) filed a voluntary Chapter 11 petition on November 18, 1986. As of the time of filing, Comerica Bank–Detroit (Comerica) held a lien on all of the debtor's assets, including general intangibles. On June 19, 1987, United States Bankruptcy Court Judge David E. Nims, Jr., entered a stipulation and order regarding use of cash collateral (the cash collateral order).

The cash collateral order approved Comerica's pre-petition blanket lien in all of debtor's assets, granted Comerica a continuing post-petition lien on the same assets, and provided in relevant part: "The security interest of Comerica in the Debtor's assets shall not be subject to: (a) surcharge under § 506 of the Bankruptcy Code; (b) ... nor shall any costs of administration be paid until Comerica's claim is paid in full, any deficiency being a § 507(b) claim." Paragraph 2.K of the cash collateral order specifically addresses the security interest held by Comerica in the proceeds of lawsuits filed by the debtor:

Comerica shall retain its lien in any possible recoveries or proceeds from lawsuits filed by the Debtor or its affiliates. All costs of prosecution of such actions may be paid from any recovery received from the lawsuit, subject to the approval of Comerica. If Comerica does not agree that the costs of prosecution are reasonable, the amount of costs deemed to be unreasonable shall not be deducted from the proceeds, and the Debtor shall be

responsible for the repayment to Comerica of this amount.

(Record 1A, p. 8).

On October 3, 1988, the debtor voluntarily converted this matter to a Chapter 7 liquidation proceeding and appointed an interim trustee. The court below notes that on many occasions, the trustee "indicated that the remaining assets of the debtor, all of which were security for Comerica's debt, had sufficient value to pay all of Comerica's debt as well as the debt owed the unsecured creditors." Record 22, at 51. On October 4, 1988, the bankruptcy court entered an order for relief from stay and a judgment for claim and delivery, awarding possession of all of the debtor's assets, including all general intangibles, to Comerica. Record 4A.

The only remaining assets of the debtor in which Comerica had a security interest included the possible recoveries from various pending lawsuits filed by the debtor. On December 5, 1988, the trustee filed an application with the bankruptcy court to employ Attorney McAlpine to prosecute the Flint Litigation. Record 3. McAlpine filed an "affirmation" in support of the application, which states that he "proposes to undertake the representation ... under a contingency fee arrangement whereby he is to receive thirty five (35%) percent of the gross recovery. Further, all costs advanced by Frank D. McAlpine or any other interested party are to be paid first." Record 4.

On December 13, 1988, the U.S. Trustee filed a certificate of review of the application for employment of professional persons relating to the trustee's employment of McAlpine. Record 5. The certificate states that there were no objections to the employment, but explicitly provides that "[t]his certificate of review does not constitute approval of any application for compensation of this professional." Record 5. On December 15, 1988, the bankruptcy court entered an order[1] authorizing the trustee to employ McAlpine. Record 6. That order states only that, based on McAlpine's affidavit, McAlpine was qualified to practice in the court and he had no conflict of interest. The order includes nothing regarding the existence of or the terms of a fee agreement.

Comerica denies receiving notice of the employment of McAlpine until after the court approved his employment. There is no proof of service in the record. On the docket sheets supplied by the bankruptcy court, it appears that proof of service of the applications regarding the employment of McAlpine was not completed until September 26, 1989, which was one day following Comerica's filing of a motion objecting to the trustee's use of the settlement funds.

McAlpine represented debtor in an action, *United States v. Brown Brothers*, in which the United States claimed damages and forfeitures in an amount of approximately $7,000,000.00 and debtor cross-claimed for approximately the same amount (the Flint litigation). McAlpine developed a defense and eventually settled the case with a payment to debtor of $127,500.00. Record 11A.

In the court below, McAlpine sought reimbursement from the settlement proceeds for his professional services pursuant to the contingency agreement he made with the trustee. In his application for approval and authorization of compensation, McAlpine sought payment of the following: $44,625.00 as attorney fees (representing 35% of the Flint Litigation settlement pursuant to the contingency agreement).[2] Record 8. As the bankruptcy court noted, there was no explanation of the type of services rendered, or record of time spent on the various duties performed—"nothing at all to support these figures." Record 22, at 54. On February 15, 1990, the bankruptcy court met with all the parties and entered an order requiring McAlpine and

---

1. The bankruptcy court refers to this order as a "proposed order," Record 22, at 53, but there is nothing in the language of the order itself to indicate that it was merely a proposed order. Record 6.

2. McAlpine also sought $20,713.01 as reimbursement for costs and expert fees, but these items are not at issue in this appeal.

the trustee to file on or before March 28, 1990 an itemization of the services performed. McAlpine supplied additional documentation, but he admits that it was speculative and unreliable because he kept no records at the time the services were provided.

Comerica argued that McAlpine should not be reimbursed because it never received notice of or approved the employment agreement. The bankruptcy court concluded that the evidence did not demonstrate that, prior to court approval of McAlpine's employment, Comerica received notice that the trustee retained McAlpine on a contingency basis. Record 22, at 57. Rather, the Court found that the contingency agreement was approved by a nonsecured creditor, CNA, which would have been next in line for payment once Comerica was paid off. "The file is replete with instances where Trustee Wein was operating on the basis that CNA, not Comerica, was the secured creditor." *Id.* at 58.

The parties do not dispute that Comerica holds a valid security interest in the property at issue—the settlement proceeds of the Flint litigation. Pursuant to 11 U.S.C. § 506(c), the court below viewed McAlpine's request for compensation as a surcharge issue because Comerica held a valid, perfected security interest. The court denied compensation pursuant to the contingency agreement for three reasons: 1) lack of notice and approval by the secured creditor; 2) lack of documentary support for the services rendered; and 3) the agreement did not comport with the Western District of Michigan's fee guidelines adopted August 2, 1989. Pursuant to its equitable powers under 506(c), however, the bankruptcy court allowed compensation in the amount of $38,000.00, which represents the amount Comerica offered to McAlpine as a settlement. Record 22, at 59–60.

McAlpine appeals the bankruptcy court's Order. He argues that Comerica should have been at least on inquiry notice of the contingency agreement because Mr. Vantine, Comerica's attorney, admitted knowing that a lawsuit was pending and that the trustee "may have been doing something to administer it." Brief in Support at 7. McAlpine contends that the bankruptcy court was in error in setting aside the contingency agreement because, he claims, the court approved the agreement and the agreement was reasonable pursuant to the standards established under case law. Comerica argues, on the other hand, that the court correctly applied bankruptcy law, 11 U.S.C. § 506(c), and was well within its discretion in setting aside the contingency fee agreement given the facts of this case.

### Standard

Pursuant to 11 U.S.C. § 327(a), a trustee appointed by a debtor in bankruptcy "may employ one or more attorneys ... to represent or assist the trustee in carrying out the trustee's duties under this title." The fee agreement may be "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis." *Id.* § 328(a). The court may, however, "allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments unanticipatable at the time of the fixing of such terms and conditions." *Id.*

█ When payment of the attorney's expenses is to be made by property in which a creditor owns a valid, perfected security interest, the creditor has a duty to pay only to the extent that the expenses satisfy the requirements of 11 U.S.C. § 506(c), regardless of the type of fee agreement made. *See e.g., In re Sonoma V*, 24 B.R. 600, 603 (9th Cir. BAP 1982); *In re Stable Mews Assocs.*, 49 B.R. 395, 398 (Bankr.S.D.N.Y. 1985); *In re Loop Hosp. Partnership*, 50 B.R. 565, 571 (Bankr.N.D.Ill.1985). Section 506(c) provides that a trustee "may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." 11 U.S.C. § 506(c).

The secured creditor's consent to expenses incurred by the trustee under sec-

tion 506(c) may not be required "if a clear and direct benefit to such holder [of the secured claim] can be demonstrated." 3 L. King, *Collier on Bankruptcy* § 506.06, at 506–62 (15th ed. 1990) (footnote with numerous citations omitted). However, the standard often employed to determine the reasonableness of the expenses incurred, particularly when the creditor has not consented to the transaction, is the amount that the holder of the security interest would have had to spend on its own behalf. L. King, *supra*, at 506–65. "The reasonableness of attorneys' fees to be awarded under 11 U.S.C. is often considered in relation to federal standards." *Id.* at 506–66 n. 17 (footnote with many citations omitted).

### Discussion

■ It is significant that this case is not brought by the trustee, but rather by way of a petition by McAlpine.[3] This Court adopts the majority view that the service provider claimant has standing to bring an action for compensation from the secured creditor pursuant to the duty imposed on the creditor under section 506(c). *See e.g., In re McKeesport Steel Casting Co.,* 799 F.2d 91 (3d Cir.1986); *In re Wyckoff,* 52 B.R. 164 (Bankr.W.D.Mich.1985). Because the trustee and debtor have no economic incentive to seek such recovery, "the secured creditor may obtain a windfall at the expense of the unpaid claimant," if the Court were not to recognize the claimant's independent right to sue under 506(c). L. King, *supra*, at 506–57 thru –58 n. 7a.

■ There is no dispute that McAlpine's services were necessary and conferred a clear benefit on Comerica. The issue is whether the contingency agreement, providing that McAlpine receive 35% of any judgment received by debtor, is reasonable under 506(c). *See In re Yermakov,* 718 F.2d 1465, 1471 (9th Cir.1983) (contingency agreement enforceable only to the extent it represents a reasonable value of the services rendered). As noted by Comerica, the cases cited by McAlpine are inapplicable

because they do not apply to the standard of reasonableness pursuant to 506(c), where the payment of the attorney's fees is to come from property subject to a valid, perfected security interest. *See In re Benassi,* 72 B.R. 44 (Bankr.D.Minn.1987); *In re Knudsen Bros. Dairy, Inc.,* 24 B.R. 418 (Bankr.D.Conn.1982); *In re Int'l Technical Prods. Corp.,* 58 B.R. 33 (Bankr.S.D.Fla. 1986).

■ The cash collateral order, which grants to Comerica a post-petition lien on all of debtor's assets, attempts to immunize Comerica from surcharge payment obligations under 11 U.S.C. § 506(c). Such a provision is not enforceable in light of the congressional mandate that a trustee have the authority to use a portion of secured collateral for its preservation or proper disposal. The cash collateral order also provides that any such charges related to the prosecution of the debtor's lawsuits are subject to Comerica's prior approval. I find that, given the circumstances of this case, such a condition should be a factor in determining whether a fee agreement is reasonable in a claim for payment under section 506(a).

■ The court below found that it was unable to assess the reasonableness of the amount of attorney fees sought because McAlpine failed to submit an itemized report of the type of services rendered, the amount of time spent for each task, etc. I agree. The fact that the court did not address the factors listed by the Fifth Circuit in *Johnson v. Georgia Highway Express,* 488 F.2d 714, 717–20 (5th Cir.1974), is not an error. *Johnson* was an action for attorney fees under the Civil Rights Act of 1964. The court held that it should assess the time and labor claimed in light of experience with other attorneys working in similar cases with similar issues. Moreover, the court continued, "[i]t is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accom-

---

**3.** As pointed out by Comerica, McAlpine should have titled this appeal: "Frank D. McAlpine, Appellant, v. Comerica Bank–Detroit, Appellee."

plished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate." *Id.* at 717. Given that McAlpine did not submit any time sheets or records that accurately reflect the work expended in his representation of the debtor in this case, there was no way the bankruptcy court could have conducted the close analysis required under *Johnson.*

As noted by Comerica, the Sixth Circuit does not require application of the *Johnson* factors to determine the reasonableness of the amount of attorney fees sought. In civil rights cases, the Sixth Circuit requires that the court determine the lodestar amount, pursuant to *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983), by multiplying the number of hours spent by a reasonable hourly rate. *Northcross v. Bd. of Educ. of Memphis City Schools,* 611 F.2d 624, 636 (6th Cir.1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980). McAlpine has not supplied the court with a basis for determining the actual number of hours expended on the case.

Finally, in his application for payment of fees, McAlpine did not comply with the fee application guidelines established and published by the United States Bankruptcy Court for the Western District of Michigan on August 2, 1989. The court established those guidelines to decrease the number of objections parties make to applications for the allowance of compensation. The guidelines require applicants to "itemize each activity, its date, the professional who performed the work, a description of both the nature and substance of the work and the time expended thereon. Records providing no explanation of activities performed will be deemed inadequate and therefore non-compensable." United States Bankruptcy Court for the Western District of Michigan, *Memorandum Regarding Allowance of Compensation and Reimbursement of Expenses for Court–Appointed Professionals,* ¶ 2 (Aug. 2, 1989).

For these reasons, I find that the bankruptcy court did not abuse its discretion in vacating the contingency agreement between McAlpine and the trustee and in compensating McAlpine according to the amount determined by Comerica to be reasonable and offered by Comerica to settle the dispute. Accordingly, the bankruptcy court's order is affirmed.