## In re WILLINGHAM INVESTMENTS, INC., Debtor.

### Bankruptcy No. 396–07648–AT3–7.

United States Bankruptcy Court,
M.D. Tennessee.

Nov. 27, 1996.

**76**

Howell & Fisher, Robert H. Waldschmidt, Nashville, TN, for Trustee.

Boult, Cummings, Conners & Berry, P.L.C., William L. Norton, III, Nashville, TN, for NBD Bank.

1. The U.S. Trustee filed an objection on September 10, 1996, and creditors MS Life Insurance Company and United Service Protection, Inc. filed their joint objection on September 12, 1996.

2. This order was approved for entry by the debtor, First Tennessee, the U.S. Trustee, MS Life Insurance Company, United Service Protection, Inc., and Gary D. and Judy Willingham as "Guarantor[s]."

3. The debtor and First Tennessee had been informed that a Chapter 11 Trustee would not be subject to TDMV's dealer licensing requirements.

4. A contract, entitled "Agreement Between Trustee and Secured Claimant," was filed October 1,

Baker, Donelson, Bearman & Caldwell, Richard B. Gossett, John H. Rowland, Nashville, TN, for First Tennessee Bank, N.A.

Manier, Herod, Hollabaugh & Smith, P.C., B. Gail Reese, Nashville, TN, State Court Receiver.

### MEMORANDUM ON OBJECTIONS TO FINAL CASH COLLATERAL ORDER

ALETA ARTHUR TRAUGER,
Bankruptcy Judge.

#### I.

The debtor, an automobile dealership, commenced its case under Chapter 11 on August 30, 1996. A preliminary cash collateral order between the debtor and First Tennessee Bank, N.A. (First Tennessee) was entered September 3, 1996, to which two objections were filed.[1] These objections were resolved by agreement. The resulting final agreed cash collateral order, entered September 17, 1996,[2] was set for an October 15, 1996 hearing on any additional objections. On September 30, 1996, Tennessee Department of Motor Vehicles (TDMV) summarily suspended the debtor's dealer license, based on more than 500 alleged violations of the Tennessee motor vehicle laws. In an effort to maintain the going concern value of the business, the debtor and First Tennessee filed a joint motion on September 30, 1996, for the appointment of a trustee.[3] An emergency hearing was held October 1, 1996, and pursuant to Orders entered immediately following the hearing, Robert Waldschmidt was appointed Chapter 11 Trustee.[4]

1996, as an attachment to Mr. Waldschmidt's verified statement affixed to the U.S. Trustee's application for approval of the appointment. The contract evidences First Tennessee's agreement that Mr. Waldschmidt is entitled to a claim of $25,000, against First Tennessee's collateral, for services rendered by his office from October 1 through November 30, 1996. Thereafter, if the debtor's assets are not liquidated, Mr. Waldschmidt is entitled to a monthly claim of $5,000, also against First Tennessee's collateral. The parties have not addressed whether conversion of the case to Chapter 7, with consent of First Tennessee, by Order entered nunc pro tunc to October 24, 1996, affected the terms of the contract.

On October 3, 1996, within two days of his appointment, the Trustee filed a timely objection to, among other things, paragraph fourteen of the final agreed cash collateral order.[5] NBD Bank, a creditor, raised objections similar to those of the Trustee at the October 15, 1996 cash collateral hearing and formalized them in a written objection filed October 17, 1996. Also at the hearing, the Assistant U.S. Trustee supported the Trustee's objection.[6] At a November 19, 1996 hearing, following additional briefing, the court heard oral argument on whether paragraph fourteen of the cash collateral order is prohibited by the Bankruptcy Code.

## II.

■ First Tennessee Bank argues that it obtained a priority pursuant to §§ 364(c) [7] and 507(b) [8] through paragraph fourteen of the cash collateral order, which provides in material part:

5. The Trustee set forth in paragraph four of his objection that he did not object to eight paragraphs of the cash collateral order, including paragraph fourteen. The inclusion of paragraph fourteen, however, was inadvertent. The Trustee plainly objected (in paragraph seven) to the granting of any administrative expense claim to First Tennessee, and paragraph fourteen contained the only provision granting the bank an administrative claim.

6. The Assistant U.S. Trustee stated at a hearing held October 22 that he should have objected originally to the provision which granted the bank an administrative claim superior to all others, even for its prepetition claim.

7. If a debtor in possession or trustee is unable to obtain credit by granting the lender an administrative expense claim pursuant to § 364(b), the lender may be granted a super superpriority pursuant to Bankruptcy Code § 364(c), which provides in material part: "[T]he court after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—(1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title...."

8. A creditor is entitled to a superpriority position pursuant to Bankruptcy Code § 507(b) when its adequate protection proves inadequate:

   If the trustee [or debtor in possession], under section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the

All of the Indebtedness[9] and any other indebtedness which may from time to time be owing by Debtor to Lender shall be due on demand, and, to the extent not paid from Collateral,[10] shall constitute an administrative expense claim, which shall have priority of the type provided for in the provisions of Sections 507(a)(1) and 507(b) of the Code and over all other costs and administrative expenses incurred in the reorganization proceedings of the kind specified in, or ordered pursuant to Sections 105, 326, 330, 331[,] 503(b), 506(a), 506(c), 507(a) and 507(b) (other than Lender's claims under 507(b) or 726 of the Code) and shall at all times be senior to the rights of Debtor or any successor trustee in this or any subsequent proceedings under the Code. No costs or expenses of administration which have been or may be incurred in these proceedings, any conversions of these proceedings pursuant to Section 1112 of the Code, or in any other proceedings related hereto, and

   debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(1) of this section arising from the stay of action against such property under section 362 of this title, from the use, sale, or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection.

9. Paragraph nine of the cash collateral order defines the term "Indebtedness" to include "[t]he Prepetition Indebtedness and the Post Petition Indebtedness."

10. Paragraph three of the cash collateral order defines the term "Collateral" to include "all of the property of the Debtor listed in [sub]paragraphs (I) through (v) of this [paragraph] 3 whether owned or in which Debtor had an interest before, on or after the Filing Date (to the extent such property is owned by Debtor or Debtor has an interest therein prior to or on or after the Filing Date[ )]." Subparagraphs (I) through (v) of paragraph three include all property and interests owned or that might be acquired by the debtor, including recoveries of preferential payments and any other recoveries from third parties. Paragraph three was subsequently amended by an Order entered October 23, 1996, to provide that First Tennessee's lien on certain property, including avoidance actions and actions against third parties, is only applicable to postpetition credit extended by First Tennessee.

no priority claims are or will be prior to or on parity with the claims of Lender against Debtor arising out of this Order of any of the Indebtedness, or, with the security interests and liens of Lender upon the Collateral; and no costs or expenses of administration shall be imposed against the Lender, its claims or its interests in the Collateral. Notwithstanding the foregoing, the Debtor will pay the U.S. Trustee its quarterly fees....

The language of the Order, interpreted without reference to §§ 364(c) and 507(b), results in a priority position applicable to the bank's prepetition and potential postpetition claims.[11]

The Eleventh Circuit has held that § 364(c) permits the granting of a priority position only to a creditor's postpetition indebtedness. *See Shapiro v. Saybrook Mfg. Co. (In re Saybrook Mfg. Co.)*, 963 F.2d 1490 (11th Cir.1992). The Eleventh Circuit limited the scope of § 364(c) based on two conclusions: (1) "cross-collateralization is not authorized as a method of post-petition financing under section 364;" and (2) "cross-collateralization is beyond the scope of the bankruptcy court's inherent equitable power because it is directly contrary to the fundamental priority scheme of the Bankruptcy Code." *Id.* at 1495; *see also Transamerica Commercial Fin. Corp. v. Citibank, N.A. (In re Sun Runner Marine, Inc.)*, 945 F.2d 1089, 1094 (9th Cir.1991) (" 'While § 364 authorizes the grant of priority or a security interest in estate assets in order to provide some assurance to post-petition lenders, the assurances so authorized do not include payment of pre-petition unsecured debt with estate assets. There is no other applicable provision in the Bankruptcy Code authoriz-

ing the debtor to pay certain pre-petition unsecured claims in full while others remain unpaid. To do so would impermissibly violate the priority scheme of the Bankruptcy Code.' " (footnote omitted) (quoting and adopting portions of *Citibank, N.A. v. Transamerica Commercial Fin. Corp. (In re Sun Runner Marine, Inc.)*, 116 B.R. 712, 719 (9th Cir. BAP 1990), *aff'd in part, rev'd in part*, 945 F.2d 1089 (9th Cir.1991))); *Otte v. Manufacturers Hanover Commercial Corp. (In re Texlon Corp.)*, 596 F.2d 1092, 1098 (2d Cir.1979) ("[W]e see nothing in § 364(c) or in other provisions of that section that advances the case in favor of 'cross-collateralization.' "); *McAlpine v. Comerica Bank–Detroit (In re Brown Bros., Inc.)*, 136 B.R. 470, 474 (W.D.Mich.1991) (finding cash collateral order unenforceable to the extent its provisions attempted "to immunize [the postpetition lender] ... from surcharge payment obligations under 11 U.S.C. § 506(c). Such a provision is not enforceable in light of the congressional mandate that a trustee have the authority to use a portion of secured collateral for its preservation or proper disposal."); *McLemore v. Citizens Bank (In re Tom McCormick Enters., Inc.)*, 26 B.R. 437, 439–40 (Bankr.M.D.Tenn.) ("Courts have been reluctant to allow the postpetition cross collateralization of pre- and postpetition debt...."), *report and mem. approved*, 32 B.R. 992 (M.D.Tenn. 1983).

The Sixth Circuit has not defined the scope of § 364(c).[12] However, in *Employee Transfer Corp. v. Grigsby (In re White Motor Corp.)*, 831 F.2d 106 (6th Cir.1987), the Sixth Circuit determined that postpetition expenses incurred as a result of prepetition

---

11. First Tennessee has not extended any postpetition credit.

12. *See Tully Constr. Co. v. Cannonsburg Envtl. Assocs., Ltd. (in re Cannonsburg Envtl. Assocs., Ltd.)*, 72 F.3d 1260, 1265 n. 5 (6th Cir.1996); *Unsecured Creditors' Comm. v. First Nat'l Bank & Trust Co. (In re Ellingsen MacLean Oil Co.)*, 834 F.2d 599, 607 (6th Cir.1987) (Nelson, J., concurring only in judgment that § 364(e) rendered appeal moot), *cert. denied*, 488 U.S. 817, 109 S.Ct. 55, 102 L.Ed.2d 33 (1988). However, Judge Wellford concluded in dicta that "the express language of [§ 364(c)] ... suggests that

the priority or lien granted thereunder is limited to securing the newly incurred debt authorized by that provision. *Id.* at 601; *see id.* at 607 (Merritt, C.J., dissenting) ("Lenders should not be permitted to use their leverage in making emergency loans in order to insulate their prepetition claims from attack. The banks here should not be permitted to make several million dollars in prepetition loans secure and uncontestable at the expense of the other creditors by the simple expedient of making a section 364 postpetition loan."). *But see id.* at 606 (Nelson, J., concurring).

commitments did not constitute administrative expenses, although the parties attempted, by agreement, to change prepetition obligations into postpetition obligations. To have found otherwise in *White* would have contradicted the "fundamental principle underlying the Bankruptcy Code ... that all creditors should be treated equitably and no creditor should receive a distribution disproportionately greater than that received by other members of its class." *Id.* at 112. Similarly, under the facts of this case, First Tennessee should not be permitted to elevate its undersecured prepetition claim above similarly situated prepetition creditors or above postpetition creditors holding administrative expense claims.[13]

Furthermore, the cash collateral order, taken as a whole, does not clearly establish a priority position. The cash collateral order, at paragraph three, contemplates the payment of postpetition operating expenses of the debtor. First Tennessee's alleged priority position established by paragraph fourteen, would, in effect, prohibit the payment of § 506(c) expenses and subordinate postpetition creditors' claims to First Tennessee's prepetition claim. Such a reading of paragraph fourteen is nonsensical and disingenuous in light of First Tennessee's consent to the payment of postpetition operating expenses to keep the dealership's doors open for business and the payment of the Trustee's fees and expenses.[14] *See Daniel v. AMCI, Inc. (In re Ferncrest Court Partners, Ltd.),* 66 F.3d 778, 782 (6th Cir.1995) ("[R]ecovery [under § 506(c) ] may be had where the claimant establishes that the secured party directly or impliedly consented or caused the expense."). To find otherwise would permit First Tennessee to foreclose the possibility of liquidating the debtor's business as a going concern.

Pursuant to 11 U.S.C. § 552(b), the court also rejects First Tennessee's claim to a priority position over postpetition creditors. The efforts of postpetition creditors have preserved the going concern value of the debtor solely for the benefit of First Tennessee, which is undersecured. Section 552(b) establishes that "[e]xcept as provided in section[ ] ... 506(c)" and "except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise," a creditor's prepetition security interest in proceeds, product, offspring, or profits "extends to such proceeds, product, offspring, or profits acquired by the estate after the commencement of the case." Under the first exception, § 506(c) expenses must be satisfied prior to First Tennessee's postpetition claim to proceeds, product, offspring, or profits. *See* S.REP. No. 989, 95th Cong., 2d Sess. 91 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5877 ("Situations in which the estate incurs expense in simply protecting collateral are governed by 11 U.S.C. 506(c)."). Under the second exception, "the equities of the case" dictate that First Tennessee be prohibited from obtaining priority over the claims of postpetition creditors for funds expended to improve First Tennessee's position. *See* H.R.REP. No. 595, 95th Cong., 1st Sess. 377 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6333 (The equities of the case exception "is designed to cover the situation where the estate expends funds that result in an increase in the value of collateral."); *see also New Hampshire Bus. Dev. Corp. v. Cross Baking Co. (In re Cross Baking Co.),* 818 F.2d 1027, 1033 (1st Cir.1987); *J. Catton Farms, Inc. v. First Nat'l Bank (In re J. Catton Farms, Inc.),* 779 F.2d 1242, 1247 (7th Cir.1985); *Wolters Village, Ltd. v. Village Properties, Ltd. (In re Village Properties, Ltd.),* 723 F.2d 441, 444 (5th Cir.), *cert. denied,* 466 U.S. 974, 104 S.Ct. 2350, 80 L.Ed.2d 823 (1984); *In re Ridgeline Struc-*

---

**13.** First Tennessee, motivated by the goal of minimizing its losses by maintaining the going concern value of the debtor's assets until they can be sold to a third party, has been the compelling force behind the progression of this case. First Tennessee and the debtor jointly moved for appointment of a Chapter 11 Trustee when the debtor's license was revoked. Through a contract with the Chapter 11 Trustee, First Tennessee agreed to a "carve-out" for his compensa-

tion. *See supra* note 4. When the Chapter 11 Trustee sought to liquidate the debtor's used car inventory, First Tennessee agreed to the sale and recommended an auctioneer. First Tennessee's attempt to control the auction and the proceeds, in fact, gave rise to sanctions.

**14.** *See supra* note 4.

*tures, Inc.,* 154 B.R. 831, 832–33 (Bankr. D.N.H.1993) (Application of the equities of the case doctrine "is just a matter of elementary fairness when an entity is operating under Court orders and people assume that if they supply goods and services they will have an administrative claim that will not simply be wiped out by the unilateral action of another party.").

■ The court holds that First Tennessee's prepetition claim is not immune from surcharge under § 506(c) and was not placed in a priority position pursuant to § 364(c).[15] In addition, First Tennessee did not receive a § 507(b) priority pursuant solely to the cash collateral order. The plain language of § 507(b) provides a creditor with a superpriority to the extent its adequate protection proves inadequate. *See* 2 NORTON BANKRUPTCY LAW AND PRACTICE 2D § 42:4 (1994 & Supp.1996). This position need not be bargained for; rather, it is automatic upon a showing and to the extent that a creditor's adequate protection proves inadequate. *Id.*

The objections to the final agreed cash collateral order will be sustained. An appropriate order consistent with this Memorandum will be entered.

### ORDER

For the reasons stated in the Memorandum on Objections to Final Cash Collateral Order filed herewith, the court finds as follows:

1. The Objection to Order Authorizing Use of Cash Collateral, and Motion to Alter or Amend Order filed October 3, 1996, by Robert H. Waldschmidt, Chapter 11 Trustee, is SUSTAINED in part and OVERRULED in part.

2. The Objection to Final Agreed Order for Use of Cash Collateral Order and Post–Petition Financing filed October 17, 1996, by NBD Bank is SUSTAINED in part and OVERRULED in part.

3. The Final Agreed Order Authorizing Debtor in Possession to Use Cash Collateral and for Post Petition Financing entered Sep-

tember 17, 1996, is vacated to the extent it attempted to grant First Tennessee Bank, N.A. immunity from surcharge under 11 U.S.C. § 506(c), a priority position to its prepetition claim pursuant to 11 U.S.C. § 364(c), and a priority position pursuant to 11 U.S.C. § 507(b).

---

15. With respect to §§ 364(c) and 506(c), the court makes no decision as to the position of any post-petition claim. *See supra* note 11.