# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-3859

_____

| | | |
|---|---|---|
| In re:  Hen House Interstate, Inc., | * | |
| | * | |
| Debtor. | * | |
| ------------------------------ | * | |
| | * | |
| Hartford Underwriters Insurance | * | |
| Company, | * | Appeal from the United States |
| | * | District Court for the |
| Movant - Appellee, | * | Eastern District of Missouri. |
| | * | |
| v. | * | |
| | * | |
| Magna Bank, N.A., formerly known as | * | |
| Magna Bank of Illinois, N.A., | * | |
| | * | |
| Respondent - Appellant. | * | |

_____

Submitted:  May 12, 1998
Filed:  July 27, 1998

_____

Before BOWMAN, Chief Judge, HEANEY and HANSEN, Circuit Judges.

_____

BOWMAN, Chief Judge.

Hartford Underwriters Insurance Company brought an action pursuant to the Bankruptcy Code, see 11 U.S.C. §§ 503 and 506(c) (1994), against Magna Bank,[1] a secured creditor of Hen House Interstate, Inc. (hereinafter "Debtor"), the debtor in the underlying bankruptcy. Hartford sought the payment of workers' compensation insurance premiums that went unpaid by the Debtor during the period in which the Debtor attempted a Chapter 11 reorganization. The Bankruptcy Court[2] ordered the surcharge of Magna's collateral pursuant to § 506(c) to secure payment of the insurance premiums, and the District Court[3] affirmed. Magna appeals.

Magna contends that Hartford lacked standing to bring its claim under § 506(c), that Magna's collateral may not be surcharged on the basis that it agreed to the continuation of the Debtor's business, that the judgment constitutes an impermissible modification of the original financing order, and that the equities favor denying the surcharge of Magna's collateral. We affirm.

I.

The Debtor owned and operated a number of businesses located throughout the Midwest, including restaurants, service stations, gift stores, and an outdoor advertising firm. On September 5, 1991, the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code. During the course of its Chapter 11 case, the Debtor remained in possession of its assets and continued to operate its businesses. Ultimately, the

---

[1]Magna Bank is the successor in interest to the rights, claims, and interests of Landmark Bank of Illinois. We refer to Magna herein notwithstanding that certain facts pertain to Landmark Bank prior to its acquisition by Magna.

[2]The Honorable David P. McDonald, United States Bankruptcy Judge for the Eastern District of Missouri.

[3]The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

Debtor's efforts to reorganize were unsuccessful and, while still operating under Chapter 11, the Debtor liquidated its assets through a combination of going-concern sales and sales of its shut-down properties. Thereafter, in January 1993, the Debtor's Chapter 11 case was converted into a Chapter 7 liquidation proceeding.

At the time the Debtor initially filed for bankruptcy relief, it owed Magna approximately $4.1 million. As security for repayment of the debt, Magna had a security interest in essentially all of the Debtor's real and personal property. The day after the Debtor filed its Chapter 11 petition, Magna agreed to loan the Debtor $300,000 to help finance the Debtor's reorganization efforts. The Debtor moved for authorization of the post-petition loan. In its financing order, to which both Magna and the Debtor agreed, the Bankruptcy Court granted the motion authorizing the loan and, in addition, authorized the Debtor's use of cash collateral that was subject to Magna's security interest to pay expenses set forth in an attached budget. See Final Order para. 24, at 17. The budget provided for workers' compensation expenses in the amount of approximately $8,600 per month. Further, the financing order required that the Debtor "pay or cause to be paid all ordinary and necessary expenses of operation . . . which are allowed in the Budget." Final Order para. 25, at 18. The financing order also contained a provision that "no expenses of administration of Debtor's Chapter 11 case . . . shall be charged against [Magna] or [its collateral] . . . pursuant to § 506(c) of the Bankruptcy Code . . . without the prior written consent of [Magna], and no such consent shall ever be implied." Final Order para. 33, at 24-25. After entry of the financing order, Magna disbursed the entire $300,000 to the Debtor.

During the period in which the Debtor attempted its Chapter 11 reorganization, Hartford provided workers' compensation insurance coverage. Under the terms of the policy, the Debtor was required to make monthly payments to Hartford. Despite the fact that the Debtor quit paying the monthly premiums, Hartford continued to provide coverage. At one point, the Debtor paid a portion of the amount due Hartford, but to date $51,871.40 remains in unpaid premiums for the period in which Hartford provided

the coverage.  Hartford filed for relief pursuant to 11 U.S.C. § 503 seeking th
allowance of its claim as an administrative expense and 11 U.S.C. § 506(c) seeking to

## II.

"As the second reviewing court, our standards are the same as the distr
we review the bankruptcy court's findings of fact for clear error and its conclusions of
de novo."  _____, 16 F.3d 234, 235
Cir. 1994).  Magna first urges this Court to reconsider and overrule our prio
decision, United States, Intern _____
Kansas City, 5 F.3d 1157, 1159 (8th Cir. 1993), wherein we held that t
standing                                                   Section 506(c)
provides,
the r                                                                        h
property to the extent of any
In Boatmen's          preted this provision to allow administrative claimants to assert
their   aims under § 506(c).  As a three judge panel, we lack authority to reconsider
_____, ___ Smith v. Copeland
en banc can overrule another panel's decision."), and therefore hold that Hartford had
g  under § 506(c) to assert its administrative claim for unpaid workers
compensation insurance premiums.

---

[4]As a member of the panel, I dissented from the decision in United States,
Internal Revenue Service v. Boatmen's First National Bank of Kansas City, 5 F.3d 1157
(8th Cir. 1993), because the plain language of 11 U.S.C. § 506(c) gives only the trustee
standing to surcharge a secured creditor's collateral.  See id. at 1161.  I remain of that
Boatmen's as controlling precedent in this Circuit.

Magna next contends that the Bankruptcy Court and the District Court erred in allowing Hartford to surcharge Magna's collateral under § 506(c). Generally, administrative expenses may not be charged against secured collateral but instead share in the distribution of the unsecured collateral pursuant to 11 U.S.C. § 503. See Boatmen's, 5 F.3d at 1159. Section 506(c) creates an exception to this general rule, providing that an expense may be surcharged against a secured creditor's collateral if the expenditure was necessary, reasonable, and directly benefited the secured creditor. See Brookfield Prod. Credit Ass'n v. Borron, 738 F.2d 951, 952 (8th Cir. 1984). In the alternative, a secured party's collateral may be surcharged where the secured party either directly or impliedly consented to the expense. See Daniel v. AMCI, Inc. (In re Ferncrest Court Partners, Ltd.), 66 F.3d 778, 782 (6th Cir. 1995).

Magna does not dispute that workers' compensation insurance is a necessary and reasonable expense. Magna does contend, however, that the expense incurred by Hartford in providing workers' compensation insurance did not directly benefit Magna because the Debtor's reorganization efforts ultimately failed and the assets were liquidated. For support, Magna relies on the Bankruptcy Court's statement that "the continued operation of the business failed to improve [Magna's] recovery." Bankruptcy Ct. Mem. Op. at 9. The District Court, however, did not clarify whether it viewed Magna as having received a direct benefit. In any event, while we would be inclined to view Magna as having received a direct benefit, see Boatmen's, 5 F.3d at 1160 ("The 'benefit' . . . lies in the ambition of the creditor to preserve and improve its secured collateral and the opportunity to realize that ambition.") (emphasis added), we need not reach that holding today because we conclude that Magna consented to the workers' compensation insurance expenses.

We believe that the case at bar is in all material aspects similar to Boatmen's. In Boatmen's, a company that owned and operated a string of dry cleaning stores filed for Chapter 11 bankruptcy. A secured creditor, Boatmen's Bank, agreed to extend post-petition credit so that the debtor company could continue its operations. During

-5-

the time in which the debtor operated under Chapter 11, its payroll taxes went unpaid. The Internal Revenue Service (IRS) filed an administrative claim pursuant to § 506(c) to recover the unpaid payroll taxes plus interest and penalties. We held that "when a secured creditor agrees to the preservation of the debtor business as a going concern and that preservation requires the payment of payroll taxes, any unpaid post-petition taxes may be charged to the secured collateral." Boatmen's, 5 F.3d at 1160.

We have essentially the same set of circumstances here. Magna agreed to the continued operation of the Debtor's businesses in the hopes of receiving a greater return through reorganization rather than through liquidation. Magna thereby "agreed to accept the expenses and risks associated with [the] anticipated benefit." Id. One such expense is workers' compensation insurance. Under Missouri law, an operating business is obligated to maintain workers' compensation insurance unless it can demonstrate that it has the ability to self-insure. See Mo. Rev. Stat. § 287.280 (Supp. 1998). Moreover, Magna expressly consented in the financing order to the provision authorizing the Debtor's use of its cash collateral for necessary operating expenses, which specifically included workers' compensation insurance premiums, and to the provision requiring that the Debtor pay or cause to be paid all necessary and ordinary expenses.

Magna attempts to distinguish in two ways the facts in Boatmen's from those in the present case. First, Magna points to the fact that in Boatmen's the bank had signed an agreement to subordinate its post-petition liens to administrative expenses. Magna thus argues that Boatmen's expressly consented to the surcharge of its collateral for administrative expenses. Magna also points out that this Court in Boatmen's found that the bank had received an overall benefit from the debtor's efforts at reorganization. Magna therefore contends that there may have been other sufficient grounds upon which this Court could have allowed the IRS to surcharge Boatmen's collateral. The holding of Boatmen's, however, turns neither on Boatmen's agreement to subordinate its liens to administrative expenses nor on the receipt of any direct benefit by

Boatmen's. Rather, the holding turns on Boatmen's agreement to the preservation of the debtor's business as a going concern. We find neither attempt to distinguish Boatmen's persuasive. Just as in Boatmen's, Magna agreed to the continued operation of the Debtor's businesses and therefore consented to the payment of workers' compensation insurance.

In further support of Magna's argument that it did not consent to the payment of workers' compensation insurance, Magna directs us to the provision contained in the financing order, which provides that "no expenses of administration of Debtor's Chapter 11 case . . . shall be charged against [Magna] or [its collateral] . . . pursuant to § 506(c) of the Bankruptcy Code . . . without the prior written consent of [Magna], and no such consent shall ever be implied." Final Order para. 33, at 24-25. This provision, however, does not affect our conclusion that Magna did consent to the use of its cash collateral for expenses associated with keeping the Debtor's businesses operating. Furthermore, we believe that an agreement by a debtor and a secured creditor to prohibit the payment of § 506(c) administrative expenses from the secured creditor's collateral would operate as a windfall to the secured creditor at the expense of administrative claimants. We therefore conclude that such a provision is unenforceable. See McAlpine v. Comerica Bank-Detroit (In re Brown Bros., Inc.), 136 B.R. 470, 474 (W.D. Mich. 1991) ("[A] provision [that attempts to immunize a secured creditor from surcharge payment obligations under § 506(c)] is not enforceable in light of the congressional mandate that a trustee have the authority to use a portion of secured collateral for its preservation or proper disposal."); see also In re Willingham Invs., Inc., 203 B.R. 75, 79 (Bankr. M.D. Tenn. 1996).

Magna next asserts that the Bankruptcy Court's order constitutes an impermissible modification of the original financing order in violation of 11 U.S.C. § 364(e), which provides:

> reversal or modification on appeal of an authorization under this
>
> he validity of any
> debt ncurred, or any priority or lien so granted, to an entity that

11 U.S.C. § 364(e).  The purpose of § 364(e) is to encourage the
to debtors by
transaction.  See Burchinal v. Central Washington Bank (In re Adams Apple, Inc.), 829 F.2d 1484, 1488 (9th Cir. 1987).  Magna argues that, because the financing order contained the provision against surcharging Magna's collateral without its consent, the decision by the Bankruptcy Court violates § 364(e).  This argument fails, however, because we have concluded above that Magna consented to the payment of workers' compensation insurance premiums by agreeing to the continued operation of the Debtor's businesses.  The Bankruptcy Court did not modify or reverse any provision contained in the financing order.

Finally, Magna argues that a surcharge of its collateral in this situation would be grossly inequitable.  For support, Magna asserts that the payments already made to Hartford by the Debtor will cover any existing or future claims that may be asserted under the workers' compensation policy and that Hartford could have minimized its exposure by canceling the policy when the premiums first went unpaid.  We find neither of these assertions compelling enough to justify a finding that the Bankruptcy Court abused its discretion.

## III.

The order of the District Court, affirming the order of the Bankruptcy Court, is affirmed.

HANSEN, Circuit Judge, concurring.

I concur in the court's opinion because, like Chief Judge Bowman, I must respect as controlling circuit precedent the panel decision in <u>United States, Internal Revenue Service v. Boatmen's First National Bank of Kansas City</u>, 5 F.3d 1157 (8th Cir. 1993). I agree with the Chief Judge's view first expressed in his dissent in <u>Boatmen's</u> and reiterated today in footnote four of the court's opinion, that the plain language of 11 U.S.C. § 506(c) gives only a trustee standing to surcharge a creditor's collateral, but that is not the current law of this circuit, and only an en banc court can, and in my view, should, change it.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.