HEANEY, Circuit Judge,
dissenting, with whom McMILLIAN, RICHARD S. ARNOLD, BEAM, and MURPHY, Circuit Judges, join.
Today this court rejects the view of four other circuits, ignores the teaching of the leading bankruptcy treatise, and departs from the well-established view that administrative claimants have § 506(c) standing to enforce administrative claims against secured creditors who have benefitted by the goods or services provided by an administrative claimant. Because the prudential standing doctrine requires this court to confer § 506(c) standing to Hartford, I respectfully dissent.
An administrative expense may be surcharged against a secured creditor’s collateral if the expense was necessary, reasonable, and directly benefitted the secured creditor, Brookfield Prod. Credit Ass’n v. Borron, 738 F.2d 951, 952-53 (8th Cir.1984), or if a secured party either directly or impliedly consented to the expense, Daniel v. AMCI, Inc. (In re Ferncrest Court Partners), 66 F.3d 778, 782 (6th Cir.1995). The original panel opinion stated that
Magna agreed to the continued operation of the Debtor’s businesses in the hopes of receiving a greater return through reorganization rather than through liquidation. Magna thereby “agreed to accept the expenses and risks associated with [the] anticipated benefit.” One such expense is workers’ compensation insurance. Under Missouri law, an operating business is obligated to maintain workers’ compensation insurance unless it can demonstrate that it has the ability to self-insure. See Mo. Rev.Stat. § 287, 280 (Supp.1998).
Hartford Underwriters Ins. Co. v. Magna Bank (In re: Hen House Interstate, Inc.), 150 F.3d 868, 872 (8th Cir.1998) (quoting IRS v. Boatmen’s First National Bank, 5 F.3d 1157, 1160 (8th Cir.1993)). The original panel further held that “Magna consented to the workers’ compensation insurance expenses,” and proceeded to the issue of standing. Hartford, 150 F.3d at 871. The panel concluded that Hartford had standing under Boatmen’s. See id. at 871. This court granted Hartford’s petition for rehearing solely on the issue of standing.
I agree with the court that the sole issue before us is whether Hartford has standing to surcharge Magna’s collateral. I believe it has. Four circuits have adopted this view. See e.g. North County Jeep & Renault, Inc. v. General Elec. Capital Corp. (In re Palomar Truck Corp.), 951 F.2d 229, 232 (9th Cir.1991), cert. denied, 506 U.S. 821, 113 S.Ct. 71, 121 L.Ed.2d 37 (1992); In re Parque Forestal, Inc., 949 *726 F.2d 504, 511 (1st Cir.1991); New Orleans Pub. Serv., Inc. v. First Fed. Sav. & Loan Ass’n (In re Delta Towers, Ltd.), 924 F.2d 74, 77 (5th Cir.1991); Equitable Gas Co. v. Equibank N.A. (In re McKeesport Steel Castings Co.), 799 F.2d 91, 94 (3d Cir.1986). This court’s view is also supported by the leading scholarly work on bankruptcy:
The reasoning behind the approach which extends standing to creditors and other claimants is that a secured creditor who received a direct benefit from the rendition of services or provision of goods by an administrative claimant ... should have the collateral charged for that benefit, regardless of whether the proceeds of the charge are paid to the trustee in reimbursement for the trustee’s prior payment to the claimant, or are paid to the claimant directly. Otherwise, if the trustee does not have available funds to pay the claimant, the trustee has no. economic incentive to seek a recovery under section 506(c) with respect to amounts that will be paid over to the claimant. As a result, the secured creditor may obtain a windfall at the expense of the unpaid claimant.
4 Collier on Bankruptcy ¶ 506.05[8] at 506-142-^43 (Lawrence P. King ed., 15th ed.1998). The majority view has been in effect since 1986, and I believe that Congress has acquiesced to the majority resolution of the conflict. See Johnson v. Transportation Agency, 480 U.S. 616, 629 n. 7, 107 S.Ct. 1442, 94 L.Ed.2d 615 (1987).
Had Congress intended to limit § 506(c) standing to trustees, it could have included the word “only” in the statute. Because it failed to do so and because Congress did not expressly deny § 506(c) standing to administrative claimants, the prudential standing doctrine dictates that this court confer § 506(c) standing on Hartford.
Any determination of standing “involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.” Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). In addition to the threshold requirements of Article III, the applicable prudential standing requirement is “whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute.” Data Processing Serv. v. Camp, 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). While Congress can limit standing beyond that allowed by Article III of the United States Constitution, “[w]here statutes are concerned, the trend is toward enlargement of the class of people who may protest....” Id. at 154, 90 S.Ct. 827. While Data Processing applied the zone-of-interests test to suits under the Administrative Procedure Act, the Supreme Court has since listed it among the other generally applicable prudential standing requirements. See Bennett v. Spear, 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). Where Congress has neither expressly allowed nor denied administrative claimants § 506(c) standing, the Supreme Court has held that “Congress legislates against the background of our prudential standing doctrine, which applies unless it is expressly negated.” Id. at 163, 117 S.Ct. 1154 (emphasis added); see also Data Processing, 397 U.S. at 154, 90 S.Ct. 827 (“Congress can, of course, resolve the question one way or another, save as the requirements of Article III dictate otherwise”).
There can be no doubt that Hartford has Article III standing, and because Congress has not expressly negated the prudential standing doctrine in § 506(e), Hartford also has § 506(c) standing. To satisfy Article III standing, a plaintiff must allege that (1) he or she suffered or imminently will suffer an injury in fact; (2) the injury is fairly traceable to the defendant’s conduct; and (3) a favorable court decision is likely to redress the injury. See Florida Gen. Contractors v. Jacksonville, 508 U.S. 656, 663-64, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993) (citations omitted). Here, Hartford provided statutorily-required workers’ *727 compensation insurance and was not paid. Magna consented to the court-authorized expenditures and benefitted from them in two ways. First, Magna benefitted from the heightened possibility it would recoup the full value of its security interest. Second, it benefitted insofar as liquidating the various businesses as going concerns optimized its profit from liquidation. Finally, a favorable decision to Hartford would undoubtedly redress its injury.
Having satisfied the general requirements for Article III standing, “the applicable prudential standing requirement [is] ‘whether the interest sought to be protected by [Hartford] is arguably within the zone of interests to be protected or regulated by the statute.’ ” Bennett, 520 U.S. at 162, 117 S.Ct. 1154 (citing Data Processing, 397 U.S. at 153, 90 S.Ct. 827) (emphasis added). “The [zone-of-interests] test is not meant to be especially demanding; in particular, there need be no indication of congressional purpose to benefit the would-be plaintiff.” Clarke v. Securities Indus. Ass’n, 479 U.S. 388, 399-400, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987) (footnote omitted). Section 506(c) provides that “[t]he trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.” 11 U.S.C. § 506(c). Here, it is clear that Hartford’s claim was reasonable and necessary. Indeed, the continuance of workers’ compensation insurance was mandated by law if Hen House was to continue in business. Additionally, the expenditures benefitted Magna as discussed above. Finally, Hartford’s § 506(c) standing is consistent with other provisions of the Bankruptcy Code. See, e.g., 11 U.S.C. §§ 503(a), 1109(b).
The court joins the Fourth Circuit[6] in its assertion that conferring § 506(c) standing to administrative claimants circumvents the Bankruptcy Code’s distribution scheme:
Allowing a claimant to proceed directly against a secured creditor would circumvent this distribution scheme, potentially causing an inequitable division of the estate. For example, if an estate has no unencumbered assets, an administrative claimant recovering directly from a secured creditor might receive full reimbursement while other administrative claimants, whose services were also necessary to the preservation of the estate, would receive nothing. An administrative claimant proceeding against a secured creditor in effect would be granted priority over the other claimants in its same class. We are of the opinion that if Congress had intended to alter so fundamentally the structure and principles underlying bankruptcy proceedings, it would have done so expressly.
Ford Motor Credit Co. v. Reynolds & Reynolds Co. (In re JKJ Chevrolet, Inc.), 26 F.3d 481, 484 (4th Cir.1994) (footnotes and citations omitted). In my view, Congress expressly altered the distribution scheme when it enacted § 506(c). As noted in our Boatmen’s opinion, administrative expenses are generally paid from the unencumbered assets of the bankruptcy estate rather than secured collateral. See 5 F.3d at 1159; see also In re JKJ Chevrolet, Inc., 26 F.3d at 483 (recognizing general rule). Section 506(c) clearly alters the general rule by requiring secured creditors to pay administrative expenses when, inter alia, the expenditures benefit the secured creditor. Thus, the obligation created by § 506(c), not the identity of the party enforcing that obligation, alters the distribution scheme.
*728 The court departs from its view that it will not entertain equitable considerations and joins the Fourth Circuit in its argument that conferring § 506(c) standing to administrative claimants will lead to inequitable division of bankruptcy estates because particular administrative claimants may be compensated while other administrative claimants, unsecured creditors, or even secured creditors could go unpaid. Even if this were true, this is a criticism of the obligation created by § 506(c), not of allowing a particular party to enforce that obligation. Congress, not the courts, codified an equitable mechanism in § 506(c) by which a secured creditor may be compelled to reimburse the administrative expenses that preserve or dispose of the secured property to the extent that those expenditures have increased the property’s value.
Finally, I believe that Hartford’s claim that Federal Rule of Bankruptcy Procedure 7071 provides an independent basis for recovery may properly be considered by this court. The court argues that because Hartford did not raise this claim before the original panel in this case and raised it in the first instance before this court en banc, we should not consider the claim. In my view, Hartford may be excused from failing to raise the claim before the original panel because the facts of this case fall squarely within the law established in our Boatmen’s opinion; and as Chief Judge Bowman correctly noted in our original panel opinion, “ ‘[o]nly the court en banc can overrule another panel’s decision.’ ” Hartford, 150 F.3d at 871 (quoting Smith v. Copeland, 87 F.3d 265, 269 (8th Cir.1996)). Because we are writing on a clean slate as a court en banc, we may certainly entertain Hartford’s claim now.
Federal Rule of Bankruptcy Procedure 7071 incorporates Rule 71 of the Federal Rules of Civil Procedure, which provides: “When an order is made in favor of a person who is not a party to the action, that person may enforce obedience to the order by the same process as if he were a party....” Fed.R.Civ.P. 71. Hartford argues that the bankruptcy court, with Mag-na’s express consent, directed the debtor to pay the premiums for the workers’ compensation insurance that Hartford provided. Because it was the intended beneficiary of the order, Hartford argues that it may recover from Magna under Rule 7071. In the interests of judicial economy, I would hold that, even if Hartford does not have standing under § 506(c), it should recover under Rule 7071.
Today this court overrules six years of Eighth Circuit law, rejects the views of four other circuits, and ignores the teaching of the leading bankruptcy treatise. It does this in disregard of the prudential standing doctrine. For the reasons stated above, I respectfully dissent.

. While the court relies heavily on the reasoning of the Fourth Circuit, even that court has recognized the fact that a secured creditor should not be able to immunize its windfall under the theory that administrative claimants lack § 506(c) standing. See Ford Motor Credit Co. v. Reynolds & Reynolds Co. (In re JKJ Chevrolet, Inc.), 26 F.3d 481, 485 n. 7 (4th Cir.1994) (recognizing the possibility that "a bankruptcy court could grant derivative standing to a claimant ... to prosecute a § 506(c) action.”).